747 F.2d 899
 Enis M.I. PINAR, Appellant,
v.
Elizabeth DOLE, in her official capacity as Sec. of
Transportation; William Halligan, individually and in his
official capacity as Chief, FAA Public Safety Division;
Edward Jones, individually and in his official capacity as
Chief, National Airport Police; Lynwood Elkins,
individually and in his official capacity as Col. National
Airport Police; Allen Fahey, individually and in his
official capacity as Lt. National Airport Police and William
Morse, individually and in his official capacity, Sgt.
National Airport Police, Appellees.
 No. 83-2006.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 7, 1984.
Decided Oct. 22, 1984.
 
 George M. Chuzi, Washington, D.C. (June D.W. Kalijarvi, Joan L. Bozek, Kalijarvi, Delate & Chuzi, Washington, D.C., on brief), for appellant.
 John R. Tyler, Civ. Div., Dept. of Justice, Washington, D.C. (Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Elsie L. Munsell, U.S. Atty., Alexandria, Va., William G. Kanter, Civ. Div., Dept. of Justice, Washington, D.C., on brief), for appellees.
 Before WINTER, Chief Judge, and RUSSELL and CHAPMAN, Circuit Judges.
 CHAPMAN, Circuit Judge:
 
 
 1
 Enis Pinar, a Federal Aviation Administration (FAA) police officer in the Public Safety Division at the Washington National Airport (WNA), appeals the district court's order granting the defendants' "motion to dismiss, or in the alternative, for summary judgment."[1] Pinar brought this suit against Elizabeth Dole, Secretary of the Department of Transportation (DOT),[2] in her official capacity, and various employees of the FAA who are sued in both their official and individual capacities, contesting three personnel actions taken against him: (1) the issuance of a letter of reprimand for making false and unfounded statements about another employee; (2) a two-day suspension without pay and benefits for mishandling his firearm; and (3) the termination of his temporary promotion to GS-6 for being unresponsive to authority. Pinar brought claims against the defendants in their official capacities under the Administrative Procedures Act, 5 U.S.C. Sec. 701 et seq., seeking declaratory and injunctive relief from the disciplinary actions taken against him. In addition, Pinar sought injunctive relief against the agency and money damages against the individual appellees on the grounds that the disciplinary actions taken against him were in violation of his first amendment rights. Finally, Pinar claimed his temporary promotion was terminated in violation of his fifth amendment right to due process. Finding that Pinar has no claim under the first amendment for monetary or injunctive relief against the appellees, has no right of judicial review under the APA, and has no cognizable property interest in his temporary promotion, we affirm the district court.
 
 
 2
 * Pinar has been a police officer with the FAA police force at WNA since December of 1978 and is currently a GS-5. Pinar's performance evaluation from his superiors covering the time period at issue in this case appraised his performance as "outstanding." On February 11, 1981, Pinar issued parking tickets to two illegally parked cars licensed to members of Congress. On February 12, 1981, Pinar ticketed the same cars for being illegally parked in excess of 24 hours. On February 13, 1981, defendant Morse, Pinar's immediate supervisor, ordered Pinar to void the tickets. Pinar declined to comply with this order. According to the allegations of Pinar's complaint, Morse told Pinar he was lobbying with a Congressman for passage of legislation favorable to the airport police, and ticketing Congressmen would jeopardize Morse's lobbying efforts. Pinar also alleges his second and third-level supervisors, defendants Fahey and Elkins, advised him not to ticket Congressmen.
 
 
 3
 More than three months later, on May 27, 1981, defendant Morse disciplined Pinar for being late to roll call.[3] The next day Pinar wrote a formal complaint to Elkins charging Morse with harassment and accusing Morse of conduct unbecoming an officer relating to Morse's February 13 order to Pinar to void the parking tickets. Pinar requested Morse be reprimanded for "subordinating the duties of a federal law enforcement officer to the prospects of material gain through political lobbying." Morse denied all of Pinar's allegations, and subsequently filed grievances against Pinar alleging Pinar had made "false and unfounded statements against him."
 
 
 4
 On June 10, 1981 Elkins informed Pinar that his temporary promotion to Special Functions Officer, GS-6, was being terminated as of June 14, 1981 because Pinar was unresponsive to authority. Pinar had been promoted on February 17, 1981, for a period not to exceed one year. The letter notifying Pinar of the temporary promotion, which was signed by him, provided it could be terminated at any time at the sole discretion of the FAA, and it might become permanent if Pinar met the requirements in the job description before the expiration of one year.
 
 
 5
 On September 9, 1981, defendant Jones notified Pinar of a proposal to suspend him for seven days for, inter alia, making false and unfounded statements about Morse in the May 28, 1981, letter of complaint. After consideration of Pinar and his attorneys' oral and written response to the proposal, Jones reduced the proposed suspension to a letter of reprimand which was issued on December 15, 1981. On or about December 28, 1981, Pinar submitted a formal grievance with respect to the December 15, 1981, reprimand. On January 20, 1982, defendant Halligan rejected the grievance as untimely since it was received after the ten-day period provided for such grievances by the applicable regulation. Pinar requested an extension of time to file his grievance from Airport Director Wilding, who denied it. Pinar appealed his letter of reprimand to the FAA Labor Relations staff. The Labor Relations staff appointed a grievance examiner, who concluded Pinar's grievance was not timely filed and was thus properly cancelled.
 
 
 6
 On February 2, 1982, defendant Jones proposed to suspend Pinar for 14 days for failing to properly secure his firearm on July 30, 1981, and for failing to observe precautions for his safety and that of others.[4] With the assistance of counsel Pinar opposed the suspension in writing and orally, arguing the proposed suspension was not timely, would not serve as constructive discipline, and was contrary to the facts. Defendant Jones decided to suspend Pinar for five days. Pinar formally grieved the suspension and a grievance examiner was appointed by Halligan to investigate. The examiner recommended no disciplinary action be taken against Pinar. Jones submitted to Halligan his objections to the examiner's recommendations. Halligan disagreed with the examiner's recommendations and in accordance with FAA guidelines referred the grievance to the next higher level for decision. On January 17, 1983, Hugh Riddle, Jr., Deputy Director of MWA, rejected the examiner's recommendations, but reduced the suspension to two days.
 
 
 7
 On July 1, 1983 Pinar brought this suit in district court alleging the personnel actions taken against him were arbitrary and capricious and violative of his first amendment rights. Pinar also claimed his temporary promotion was terminated in violation of his fifth amendment right to due process of law. The district court dismissed Pinar's complaint. With respect to Pinar's APA and first amendment claims the court held that, in light of the comprehensive remedies available under the Civil Service Reform Act of 1978, Pub.L. 95-454, 92 Stat. 1111 et seq. (CSRA), relief in federal district court from the minor personnel actions at issue must be denied. The court also determined that Pinar had no legally cognizable property interest in his temporary promotion requiring due process protection under the fifth amendment.
 
 II
 
 8
 The initial issue to be addressed is whether in light of the CSRA, Pinar has a claim under the first amendment for damages against the individual defendants. For purposes of this decision we must assume that Pinar's first amendment rights were violated by the disciplinary actions taken against him. See Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 2408, 76 L.Ed.2d 648 (1983). Pinar asserts that his superiors are liable for their constitutional torts under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In Bivens, the Supreme Court held that the Constitution itself supports a private cause of action for damages against a federal official. However, in Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Supreme Court declined to permit a federal employee to bring a Bivens -type cause of action for money damages against his supervisors for alleged violations of his first amendment rights. In Bush, an aerospace engineer employed at a facility operated by the National Aeronautics and Space Administration made a number of public statements that were highly critical of the agency. Subsequently the agency initiated an adverse personnel action to remove the engineer, Bush, from his position. After considering Bush's reply, respondent Lucas, the Director of the Center, demoted Bush instead of removing him. Bush successfully pursued administrative remedies and was ultimately restored to his former position and awarded back pay.
 
 
 9
 While his administrative appeals were pending, Bush brought suit against Lucas to recover damages for defamation and violation of his constitutional rights. The Supreme Court declined to authorize a new nonstatutory damages remedy for federal employees whose first amendment rights are violated by their superiors. The Court concluded that "because such claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States ... it would be inappropriate for us to supplement that regulatory scheme with a new judicial remedy." Bush, 103 S.Ct. at 2406. In reaching its conclusion the Court acknowledged that a Bivens action could be defeated in two situations, one of which is where there are "special factors counselling hesitation in the absence of affirmative action by Congress." Bush, 103 S.Ct. at 2411. The Court noted the comprehensive remedies available to federal employees who are aggrieved by personnel actions and stated:
 
 
 10
 The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue.
 
 
 11
 Id., 103 S.Ct. at 2416. The Court determined that this question would best be decided by Congress, which is in a far better position than a court to weigh the costs and benefits that would result from the addition of another remedy for federal employees whose constitutional rights have been violated. Thus, the Court declined to authorize a new nonstatutory damages remedy.
 
 
 12
 Pinar attempts to distinguish Bush on the ground that he was not afforded the comprehensive administrative remedies Bush received. Pinar argues that whereas Bush had substantial, constitutionally adequate remedies available to redress alleged constitutional violations, the statutory remedies available to him were inadequate and constitutionally deficient.
 
 
 13
 It is undisputed that Pinar was not afforded the extensive administrative remedies afforded to Bush.[5] It is equally clear that the personnel actions taken against Pinar--a letter of reprimand, two-day suspension, and termination of his temporary promotion--were less serious than the demotion or "adverse action" Bush received. The CSRA is designed so that employees who are subjected to more severe or "adverse" actions, 5 U.S.C. Sec. 7513, are entitled to formal proceedings before the agency, an appeal to the Merit Systems Protection Board (MSPB), and judicial review in the Court of Appeals for the Federal Circuit. 5 U.S.C. Sec. 7703(b)(1) (Supp.1983). Employees who are subjected to such minor personnel actions as Pinar received are afforded internal agency grievances and a complaint to the Special Counsel. This remedial scheme reflects Congress' balancing of the interest of federal employees in procedural protections and the right of agencies to be able to maintain the most efficient workforce possible. S.Rep. No. 95-969, 95th Cong., 2d Sess., reprinted in 1978 U.S.Code, Cong. & Admin.News at 2723, 2768.
 
 
 14
 The fact that the administrative remedies available to Pinar were less exhaustive than those available to Bush does not render Bush v. Lucas inapposite. Contrary to Pinar's assertions, the remedies available to him to redress each of the personnel actions taken against him were both comprehensive and constitutionally adequate. With respect to Pinar's two-day suspension for mishandling his firearm, the agency could only take action "for such cause as will promote the efficiency of the service" and only after affording Pinar:
 
 
 15
 (1) an advance written notice stating the specific reasons for the proposed action;
 
 
 16
 (2) a reasonable time to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer;
 
 
 17
 (3) [representation] by an attorney or other representative; and
 
 
 18
 (4) a written decision and the specific reasons therefor at the earliest practicable date.
 
 
 19
 5 U.S.C. Sec. 7503. In addition, copies of all records relating to the suspension must be "maintained by the agency and furnished to the MSPB upon its request and to the employee affected upon the employee's request." 5 U.S.C. Sec. 7503.[6] Furthermore, an employee may grieve "any matter of concern or dissatisfaction relating to [his] employment ... including any matter on which an employee alleges that coercion, reprisal, or retaliation has been practiced against him or her." 5 C.F.R. Sec. 771.205. Thus, Pinar was able to file a formal grievance with respect to both the two-day suspension and the letter of reprimand under the agency's grievance system.[7]
 
 
 20
 The CSRA afforded Pinar other protections against unlawful actions by his supervisors. 5 U.S.C. Sec. 2302(b)(8) declares it a "prohibited personnel action" to take any personnel action "as a reprisal for a disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences a violation of any law, rule, or regulation...." As the legislative history to this provision makes clear, Congress intended that a supervisor's taking "action against an employee ... without having proper regard for the individual's privacy or constitutional rights ... could result in dismissal, fine, reprimand, or other discipline for the supervisor." S.Rep. No. 95-969, 95th Cong., 2d Sess., reprinted in 1978 U.S.Code, Cong. & Admin.News at 2745. Allegations of prohibited personnel practices are investigated by the Special Counsel for the MSPB, who has the authority to recommend corrective action to the agency involved and the MSPB. 5 U.S.C. Sec. 1206(a)-(c). If the agency fails to implement the recommended corrective action, the Special Counsel may request the Board to consider the matter, and the Board may order such corrective action as it deems necessary. 5 U.S.C. Sec. 1206(c)(1)(B). Section 1208 allows the Special Counsel to request, and the Board to grant, stays of personnel actions the Special Counsel reasonably believes were taken, or are to be taken, as a result of prohibited personnel practices. Judicial scrutiny of prohibited personnel practices is deemed to be "limited, at most, to insuring compliance with the statutory requirement that the OSC perform an adequate inquiry." Carducci v. Regan, 714 F.2d 171, 175 (D.C.Cir.1983) (quoting Cutts v. Fowler, 692 F.2d 138, 140 (D.C.Cir.1982). Thus, Pinar was able to bring before the Special Counsel his claims that the personnel actions taken against him, including the termination of his temporary promotion, were taken in retaliation for exercising his first amendment rights. That the Special Counsel found no basis to determine that the agency acted illegally in disciplining Pinar does not render this remedy inadequate.
 
 
 21
 Pinar does not assert that he was not given the aforementioned protections, but rather that the statutory remedies afforded to him with respect to his two-day suspension and the termination of his temporary promotion were constitutionally inadequate to address the alleged violations of his constitutional rights[8] and that therefore due process requires that he be provided a judicially-created damages remedy in district court. We disagree.
 
 
 22
 We decline to accept Pinar's argument that because he was not afforded the exact same statutory remedial procedures available to Bush, the statutory procedures afforded him were inadequate as a matter of due process to redress the alleged violations of his first amendment rights. In enacting the CSRA Congress intentionally designed the remedial provisions of the Act to provide employees with differing amounts of process depending upon the seriousness of the personnel action taken. The United States Supreme Court acted similarly in the academic setting when it held that a student suspended from school for less than ten days, while having liberty and property interests that qualify for the protections of the due process clause, is entitled only to notice of the charges against him and an opportunity to present his version of the evidence, preferably prior to the suspension. Goss v. Lopez, 419 U.S. 565, 581, 95 S.Ct. 729, 739, 42 L.Ed.2d 725 (1975). Due to the brevity of the suspension in question, the court refused to hold that due process requires affording the student "the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident." Goss, 419 U.S. at 583, 95 S.Ct. at 740. The Court noted, however, that "longer suspensions or expulsions ... may require more formal procedures." Id. at 584, 95 S.Ct. at 741. Thus, "the length and consequent severity of a deprivation," while " 'not decisive of the basic right' to a hearing of some kind," is a "factor to weigh in determining the appropriate form of a hearing." Id. at 576, 95 S.Ct. at 737 (quoting Fuentes v. Shevin, 407 U.S. 67, 86, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556 (1972)). The Supreme Court has on other occasions held that due process may be satisfied by something less than a trial-type hearing. See Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).
 
 
 23
 In the area of governmental employer-employee relations the Supreme Court has determined that "the existing civil service remedies [available to Bush] for a demotion in retaliation for protected speech are clearly constitutionally adequate." Bush, 103 S.Ct. at 2411, n. 14; See Arnett v. Kennedy, 416 U.S. 134, 165-67, 185, 212-16, 94 S.Ct. 1633, 1649-1650, 1673-1675, 40 L.Ed.2d 15 (1974) (per Powell, Blackmun, White, Douglas, Brennen, and Marshall, J.J.). However, the deprivation Pinar suffered was minor compared to the demotion Bush received, and certainly the importance of the interests involved is one factor to be considered in determining the formality and procedural requisites for a due process hearing. See Board of Regents v. Roth, 408 U.S. 564, 570, n. 8, 92 S.Ct. 2701, 2705 n. 8, 33 L.Ed.2d 548 (1972) and Arnett v. Kennedy, 416 U.S. 134, 164, n. 1, 94 S.Ct. 1633, 1649 n. 1, 40 L.Ed.2d 15 (1974) (Powell, J.) citing Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971).
 
 
 24
 Pinar's assertion, then, that the statutory remedies available to him to redress his due process claims are constitutionally inadequate merely because they are less comprehensive than the remedies afforded to petitioner Bush is faulty. As the Supreme Court stated in Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972), "[i]t has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands." Indeed, "[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." Cafeteria Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961).
 
 
 25
 To determine what procedural protections are due in Pinar's particular situation, we must look to "the nature of the private interest, the adequacy of the existing procedure in protecting that interest, and the government interest in the efficient administration of the applicable law." Thomason v. Schweiker, 692 F.2d 333, 336 (4th Cir.1982) citing Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). With respect to the "nature of [Pinar's] private interest," it is clear that Pinar's right to speak freely regarding matters of public concern is entitled to zealous protection from the federal courts. In this regard it should be remembered, however, that the deprivation suffered by Pinar (letter of reprimand and two-day suspension without pay) is less serious than the demotion suffered by Bush.
 
 
 26
 Second, Pinar was not without adequate statutory procedures to challenge the appellees' unconstitutional conduct. As noted previously, Pinar was able to refute, with the assistance of counsel, the agency's claims against him regarding his two-day suspension, and present any evidence to support his answer that the appellees' conduct was illegal. Pinar's ability to grieve his two-day suspension gave him additional opportunity to rebut the agency's evidence and assert the unconstitutionality of the agency's conduct.
 
 
 27
 Pinar was also able to bring before the OSC his claims that the personnel actions taken against him were taken in retaliation for the exercise of his first amendment rights. Pinar's attempt to discount the effectiveness of this remedy on the basis that the Special Counsel has absolute discretion to decline to hear a case and to decline to take any action on a case that it does hear, see Borrell v. Int'l Communications Agency, 682 F.2d 981, 984-85 (D.C.Cir.1982), is unpersuasive. The legislative history of the CSRA reveals that the Special Counsel can decline to investigate a charge only if it "appears groundless and frivolous on its face." S.Rep. No. 95-969, 95th Cong., 2d Sess., reprinted in 1978 U.S.Code Cong. & Admin.News at 2754. Moreover, as outlined above, additional comprehensive remedies are available to employees whose claims are deemed to be not frivolous by the OSC.
 
 
 28
 Third, the government's interest in maintaining discipline in the workforce is great. As noted by Justice Powell,
 
 
 29
 [I]n the present case, the Government's interest, and hence the public's interest, is the maintenance of employee efficiency and discipline. Such factors are essential if the Government is to perform its responsibilities effectively and economically. To this end, the Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs.
 
 
 30
 Arnett v. Kennedy, 416 U.S. 134, 168, 94 S.Ct. 1633, 1651, 40 L.Ed.2d 15 (1974).
 
 
 31
 After weighing the above considerations, it is clear that Pinar was afforded constitutionally adequate procedures to protect his first amendment rights. Indeed, Congress balanced those factors in enacting the CSRA and provided for separate procedures depending upon the gravity of the personnel action in question. To afford Pinar a full hearing with the right to direct judicial review of the relatively minor personnel actions he received would unduly frustrate the government's interest in efficiently administering the federal workforce. In addition, an employee such as Pinar, who is the subject of a minor personnel action should not be permitted immediate judicial relief in the form of punitive damages when such relief has been denied employees like Bush who are the subject of more serious personnel actions. To provide such relief would put supervisors in the untenable position of having to take proper supervisory actions against federal employees or take no action at all so as to avoid monetary liability. In light of the nature and effect of the personnel actions involved in this case, the procedures afforded to Pinar under the CSRA to protect his first amendment interests are Constitutionally adequate.
 
 
 32
 The Fifth, Sixth and Eleventh Circuits have dismissed constitutional damages claims brought by plaintiffs who had no greater statutory remedies available to them than Pinar had available to him in the instant case. In Broadway v. Block, 694 F.2d 979 (5th Cir.1982) the plaintiff, who had been reassigned to a different position within the Farmer's Home Administration without a change in grade or pay, brought a Bivens cause of action in district court. In affirming the district court's dismissal of the case the court relied on its earlier decision of Bush v. Lucas, 647 F.2d 573 (5th Cir.1981), aff'd., 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) and its holding in Broussard v. United States Postal Service, 674 F.2d 1103 (5th Cir.1982) that a plaintiff terminated from his job as postmaster had no Bivens remedy against federal officials. The court in Broadway noted
 
 
 33
 The reasoning of Bush and Broussard applies with greater force to the facts of this case than it does to the facts of these earlier cases. Here the deprivation is less serious--a reassignment compared to a demotion in Bush and a termination in Broussard --while the violence done to the administrative scheme by allowing plaintiffs to sue directly in federal court is greater, since reassignments are no doubt more routine than demotions and terminations, and since demotions and terminations are already subject to some judicial review under the CSRA.
 
 
 34
 Id. at 985. Accord, Watson v. U.S. Dept. of Housing and Urban Development, 576 F.Supp. 580, 586 (N.D.Ill.1983) ("the administrative remedies available to [an employee transferred allegedly in violation of his first amendment rights] are sufficiently adequate to require [the employee] to present his first amendment claim within that administrative process").
 
 
 35
 Similarly, in Braun v. United States, 707 F.2d 922 (6th Cir.1983) a former Internal Revenue Service (IRS) employee brought a Bivens claim alleging he was given poor performance evaluations in retaliation for his speaking out against IRS deficiencies. The court affirmed the trial court's dismissal of the plaintiff's suit upon finding that "the unique relationship between the Federal Government and its civil service employees is a special consideration which counsels hesitation in inferring a Bivens remedy in the absence of affirmative congressional action." Id. at 926.
 
 
 36
 Recently, the Eleventh Circuit found Bush dispositive in affirming the dismissal of a federal employee's complaint which alleged she had been disciplined in violation of her fifth and first amendment rights. Hallock v. Moses, 731 F.2d 754 (11th Cir.1984). The discipline received by the plaintiff was being reinstated to the position from which she was removed but without the same duties and responsibilities which she had prior to removal. The Court, after noting that "[t]he facts in Bush bear a notable resemblance to those in this case," concluded,
 
 
 37
 We, like the Court in Bush, do not decide whether it would be good policy to permit a federal employee to recover damages from a supervisor who has improperly disciplined him for exercising his first amendment rights ... Congress is in a better position to decide whether the public interest would be served by fashioning the judicial remedy urged by [plaintiff]. Thus, we decline "to create a new substantive legal liability without legislative aid."
 
 
 38
 Id. at 757 (citations omitted).
 
 
 39
 Thus, since Pinar was provided a constitutionally adequate remedy to protect his first amendment rights, the Constitution does not require us to "create a judicially-fashioned damages remedy" in this case. See Bush, 103 S.Ct. at 2411, n. 14.
 
 III
 
 40
 Pinar's complaint also requests that the defendants be enjoined from harassing him in the exercise of his first amendment rights and proposing any further unwarranted disciplinary action against him. The district court determined that in light of the comprehensive remedies available to Pinar under the CSRA, such relief in district court from the minor personnel actions at issue must be denied.
 
 
 41
 The parties agree that federal courts have the authority to grant injunctive relief to the victim of a constitutional violation by virtue of their jurisdiction to decide all cases arising under the Constitution. As noted in Bush, "[28 U.S.C. Sec. 1331 (1976) ] provides not only the authority to decide whether a cause of action is stated by a plaintiff's claim that he has been injured by a violation of the Constitution ... but also the authority to choose among available judicial remedies in order to vindicate constitutional rights." Bush, 103 S.Ct. at 2409 (citation omitted). The issue presented is thus whether the district court's power to grant injunctive relief should be exercised in light of the comprehensive and constitutionally adequate remedial scheme Congress has established in the CSRA.
 
 
 42
 Pinar argues that because the CSRA does not provide for judicial review of the disciplinary actions taken against him, the district court is obligated to exercise its jurisdiction under 28 U.S.C. Sec. 1331(a) and provide judicial relief. Pinar points out that where jurisdiction has been granted by Congress, access to the courts should be restricted "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent." Abbott Laboratories v. Gardner, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) quoting Rusk v. Cort, 369 U.S. 367, 379-380, 82 S.Ct. 787, 794-795, 7 L.Ed.2d 809 (1962). See also Carlson v. Green, 446 U.S. 14, 20, 100 S.Ct. 1468, 1472, 64 L.Ed.2d 15 (1980). Such Congressional intent need not be expressly provided in the language of the statute, however. See Bush, 103 S.Ct. at 2411 ("when Congress provides an alternative remedy, it may, of course, indicate its intent by statutory language, by clear legislative history, or perhaps even by the statutory remedy itself, that the Court's power should not be exercised.") (emphasis added).
 
 
 43
 A review of the remedial provisions of the CSRA supports the finding that Congress clearly intended the comprehensive remedies available to Pinar to be exclusive. Certainly Congress did not intend to preclude the judiciary from reviewing all federal personnel matters. Rather, Congress specifically set forth which personnel matters are entitled to judicial review. In general the CSRA provides:
 
 
 44
 (1) for major personnel actions specified in the statute ("adverse actions"), direct judicial review after extensive prior administrative proceedings; (2) for specified minor personnel actions infected by particularly heinous motivations or disregard of law ("prohibited personnel practices"), review by the Office of Special Counsel, with judicial scrutiny "limited, at most, to insuring compliance with the statutory requirement that the OSC perform an adequate inquiry," Cutts v. Fowler, supra, 692 F.2d at 140; and (3) for the specified minor personnel actions not so infected, and for all other minor personnel actions, review by neither OSC nor the courts.
 
 
 45
 Carducci v. Regan, 714 F.2d 171, 175 (D.C.Cir.1983). The absence of a provision for direct judicial review of prohibited personnel actions among the carefully structured remedial provisions of the CSRA is evidence of Congress' intent that no judicial review in district court be available for the actions involved in this case. See, e.g., U.S. v. Erika, 456 U.S. 201, 208, 102 S.Ct. 1650, 1654, 72 L.Ed.2d 12 (1982) ("in the context of the [Medicare] statute's precisely drawn provisions, this omission [of a provision for judicial review of certain claims regarding medicare payments] provides persuasive evidence that Congress deliberately intended to foreclose further review of such claims"); Block v. Community Nutrition Institute, --- U.S. ----, ---- - ----, 104 S.Ct. 2450 at 2453-2455, 81 L.Ed.2d 270 (1984) (the inclusion in the Agricultural Marketing Agreement Act of 1937 of a review procedure for milk handlers affected by milk market orders coupled with the omission of a similar procedure for consumers is evidence that Congress intended to preclude consumers from obtaining judicial review of market orders).
 
 
 46
 Pinar concedes that with respect to adverse actions which are appealable to the MSPB Congress has expressed its intent to avoid district court review by providing for review in the Courts of Appeals (and now exclusively in the Federal Circuit). However, Pinar asserts Congress has not expressed its intent regarding actions which, like those complained of here, are not appealable to the Board. Thus, the argument goes, direct review in district court should be extended to employees like Pinar who are subjected to modest disciplinary actions which are not appealable to the Board. The incongruity presented by Pinar's argument is readily apparent. To grant an employee subjected to a letter of reprimand and two-day suspension in violation of his constitutional rights a full trial in district court while an employee, who is fired in violation of his constitutional rights, is allowed only limited judicial review in the Federal Circuit after exhausting his administrative remedies would fly in the face of Congress' clear intent to distinguish between disciplinary actions according to the severity of the punishment imposed and provide for varying degrees of review based on the gravity of the deprivation in question. Furthermore, since even the most minor of disciplinary actions can be alleged to have been taken in retaliation for something an employee once said that is protected by the first amendment, providing judicial review in federal district court for very minor disciplinary actions would require courts to become involved in the most rudimentary of personnel matters, and inhibit supervisors from taking even the most minor disciplinary actions for fear of having to justify their actions in federal court.
 
 
 47
 We are not unmindful of the decision of the District of Columbia Court of Appeals, Borrell v. Int'l Communications Agency, 682 F.2d 981 (D.C.Cir.1982) in which the court found no "clear statement" in the CSRA of Congressional intent to displace judicially-created remedies for constitutional violations. In Borrell, the plaintiff was a former probationary employee who brought an action for injunctive relief based on the first amendment contesting her removal from the International Communications Agency. Since the plaintiff was a probationary employee, she did not have the right of tenured employees under the CSRA to appeal to the MSPB and thereafter to the Federal Circuit Court of Appeals. The Court determined that the statutory remedies available to the plaintiff were insufficient to redress her removal in violation of her constitutional rights. However, in the instant case Pinar was not removed from his employment; he was issued a letter of reprimand and suspended for two days, deprivations for which the statutory remedies available are clearly adequate to provide relief. While we do not address whether the holding of Borrell is correct with respect to probationary employees who are removed from their employment in violation of the Constitution, we decline to extend that holding to the personnel actions at issue here which are substantially less severe in nature. But see, Cutts v. Fowler, 692 F.2d 138 (D.C.Cir.1982).[9]
 
 
 48
 We also note that in Hallock v. Moses, 731 F.2d 754 (11th Cir.1984), the court affirmed the trial court's dismissal of a federal employee's claims for damages and injunctive relief grounded on the first and fifth amendments. In Hallock the appellant, who was reinstated to her former position but without the duties and responsibilities she had prior to her removal, alleged, inter alia, that the appellees had harassed and retaliated against her in violation of her right of free speech because she filed a valid employee grievance and spoke out in opposition to unlawful acts suffered by her. The appellant requested, like Pinar, that the court enjoin the appellees' harassment and retaliation against her. The appellees asserted that the appellant was not harassed or subjected to retaliation. Rather than remand the case to the district court to provide injunctive relief, the court described the case as a "classic federal employment dispute of the type anticipated by Congress when it enacted the procedures in 5 U.S.C.A. Sec. 2302 (West Supp.1984)." Id. at 757. The court directed the plaintiff, who had failed to exhaust the CSRA remedies available to her, to "request a job audit under the appropriate civil service provision(s) and follow the remedial system constructed by Congress to give federal employees, in [appellant's] position, appropriate relief." Id. at 758. Similarly, the minor personnel actions at issue in the instant case "are of the type anticipated by Congress" in enacting the remedial provisions of the CSRA, and should be resolved under that scheme.[10]
 
 
 49
 Thus, in this case where the personnel actions are so minor in nature and where the available statutory remedies are constitutionally adequate to provide relief, we conclude that Congress intended that judicially-created remedies in district court not be made available.
 
 IV
 
 50
 Pinar also argues that the district court has subject matter jurisdiction over his claims of arbitrary and capricious agency action under the Administrative Procedures Act, 5 U.S.C. Sec. 701 et seq. While one "adversely affected or aggrieved by agency action within the meaning of a relevant statute," 5 U.S.C. Sec. 702, may generally obtain judicial review under the APA, the Act confers no cause of action where the "agency action is committed to agency discretion by law," 5 U.S.C. Sec. 701(a)(2) or where the relevant statute "preclude(s) judicial review." 5 U.S.C. Sec. 701(a)(1). As stated recently by the Supreme Court,
 
 
 51
 Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved. Therefore, we must examine this statutory scheme "to determine whether Congress precluded all judicial review, and if not, whether Congress nevertheless foreclosed review to the class to which [Pinar] belong[s]."
 
 
 52
 Block v. Community Nutrition Institute, --- U.S. ----, ----, 104 S.Ct. 2450, 2454, 81 L.Ed.2d 270 (1984) (citations omitted). As illustrated above, the statutory scheme of the CSRA reveals that Congress intentionally foreclosed judicial review to employees who, like Pinar, are subjected to disciplinary actions which are modest in nature by providing judicial review only of "adverse" personnel actions.
 
 
 53
 In Broadway v. Block, the Fifth Circuit refused to permit judicial review under the APA of the plaintiff's claim that she was improperly reassigned to a new position in violation of her constitutional rights. The court concluded, "[w]e decline to allow an employee to circumvent this detailed scheme governing federal employer-employee relations by suing under the more general APA." Broadway, 694 F.2d at 986. The fact that Pinar exhausted his administrative remedies in this case does not diminish the significance of the Broadway court's rationale:
 
 
 54
 allowing suit under the APA would likewise "encourage aggrieved employees to bypass the statutory and administrative remedies in order to seek direct judicial relief and thereby deprive the Government of the opportunity to work out its personnel problems within the framework it has so painstakingly established."
 
 
 55
 Id. at 986. (quoting Bush, 647 F.2d at 577).
 
 
 56
 More recently, in Carducci v. Regan, 714 F.2d 171 (D.C.Cir.1983), the court held that after enactment of the CSRA, complaints setting forth non-constitutional allegations involving personnel actions fail to state a claim under the APA. In Carducci, the plaintiff alleged his reassignment was arbitrary and capricious and that through procedural irregularities his rights under the Due Process clause were violated. The appellate court refused to consider the due process issue, which was not properly addressed by counsel. However, with respect to the claim of arbitrary and capricious agency action the court concluded that the failure to provide judicial review for minor personnel actions "within the remedial scheme of so comprehensive a piece of legislation reflects a congressional intent that no judicial relief be available--that the matter be deemed 'committed to agency discretion by law.' " Id. at 174.
 
 
 57
 Nor does our recent decision in Hostetter v. United States, 739 F.2d 983 (4th Cir.1984), support Pinar's position that he is entitled to judicial review of the personnel actions at issue here. Hostetter merely provides, "[i]n situations such as that here, in which there is no preclusion-of-review statute and no special statutory review procedure provided, the APA states the policy that a person suffering legal wrong because of agency action should have judicial review thereof by way of any applicable form of legal action, including an action for injunctive relief." However, unlike Pinar, Hostetter was a nonappropriated fund instrumentality employee and thus was not subject to the provisions of the CSRA. Thus, whether or not the CSRA precludes review of the minor personnel actions at issue here was not considered by this court in Hostetter.
 
 
 58
 Thus, we agree with the district court that Congress clearly intended the CSRA to be the exclusive remedy for federal employees and the Court of Appeals for the Federal Circuit to be the sole forum for judicial review.
 
 V
 
 59
 Finally, Pinar appeals the trial court's dismissal of his fifth amendment claim on the ground that Pinar had no property interest in his temporary promotion that required due process protection. Since the fifth amendment prohibits the deprivation of property without due process of law, Pinar must first establish that he was deprived of a cognizable property interest.[11] See Board of Regents v. Roth, 408 U.S. 564, 576-77, 92 S.Ct. 2701, 2708-2709, 33 L.Ed.2d 548 (1972). It is well-settled that "property interests in employment positions are not created by the Constitution, but rather, are created and their dimensions defined by independent sources such as state law, local ordinances, and employment contracts." Kersey v. Shipley, 673 F.2d 730, 732 (4th Cir.1982). See also, Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); Perry v. Sinderman, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).
 
 
 60
 Pinar argues his property interest in his temporary promotion for a period not to exceed one year was secured pursuant to 5 U.S.C. Sec. 7513(a) and the terms and conditions of the employment agreement which he signed at the time he was initially promoted. 5 U.S.C. Sec. 7513(a) provides that an agency may take an adverse action such as a reduction in grade or pay "against an employee only for such cause as will promote the efficiency of the service." Pinar contends that, since under Sec. 7513(a) he could only be demoted for cause, he had a property interest in his temporary promotion protected by due process. Johnson v. United States, 628 F.2d 187, 194 (D.C.Cir.1980) (and cases cited). Certainly, a tenured employee terminated from a promotion which is not temporary is entitled to the application of the adverse action procedures outlined in Sec. 7513(b). However, the protections set forth in Sec. 7513(b) apply only to "employees" as defined by Sec. 7511(a), which excludes a person such as Pinar who is serving a probationary or temporary appointment limited to one year. 5 U.S.C. Sec. 7511(a)(1)(A) defines "employee" as:
 
 
 61
 an individual in the competitive service who is not serving a probationary or trial period under an initial appointment or who has completed 1 year of current continuous employment under other than a temporary appointment limited to 1 year or less ...
 
 
 62
 Pinar's contention that he is not excluded by this definition of employee because Sec. 7511(a)(1)(A) applies to exclude only one serving a temporary appointment, and not to Pinar, who received a temporary promotion, is without merit. Although, as Pinar points out, temporary appointments and temporary promotions are governed by separate chapters of the Federal Personnel Manual, the chapter of the Federal Personnel Manual governing temporary promotions recognizes that "adverse action procedures apply to the return of an employee to his or her regular position after a temporary promotion lasting more than 2 years. ( [5 C.F.R.] Sec. 752.401(c)(7))." Federal Personnel Manual Chap. 335, Subch. 1-5(a)(1)(c). (emphasis added). The cited regulation expressly excludes the termination of a temporary promotion for two years or less from the adverse action procedures provided under the statute:
 
 
 63
 (c) Exclusions. The subpart does not apply to actions and employees excluded by 5 U.S.C. 7511(b) and 7512, or the following ...
 
 
 64
 (7) Action which terminates a temporary promotion within a maximum period of two years and returns the employee to the position from which temporarily promoted, or reassigns or demotes the employee to a different position not at a lower grade or level than the position from which temporarily promoted.
 
 
 65
 5 C.F.R. Sec. 752.401(c)(7). Thus, the termination of Pinar's temporary promotion for a period not to exceed one year, which returned him to the position from which he was promoted, was not an action against an employee for which cause was required under the statute. Where an employee can be removed from a position for less than cause, he has no constitutionally protected property interest in continued employment and can be removed summarily. See Bishop v. Wood, 426 U.S. 341, 345, n. 8, 96 S.Ct. 2074, 2078 n. 8, 48 L.Ed.2d 684 (1976).
 
 
 66
 In addition, the stated understanding between Pinar and the Agency, which is set forth in a letter confirming Pinar's temporary promotion, indicates Pinar had no cognizable property interest in his promotion. The letter provides:
 
 
 67
 This is to confirm your selection under merit promotion announcement AMA-80-736 for temporary promotion [to] the position of Airport Police Officer, GS-083-6, effective February 22, 1981 not to exceed February 21, 1982. This temporary promotion may be terminated at any time at the discretion of the agency. The promotion may be made permanent if you meet the requirements specified in the position description prior to the expiration date of your temporary promotion.
 
 
 68
 If you are returned to your regular position, the adverse action procedures outlined in FPM Chapter 752 and the reduction-in-force procedures in FPM Chapter 351 will not apply. If you are returned to your regular position your salary at the GS-5 level will be the same as that to which you would have been entitled had you not been promoted, and any within-grade increase to which you would have been entitled if your performance was satisfactory.
 
 
 69
 This letter also contains Pinar's signature acknowledging that
 
 
 70
 I have read the above information and understand the reasons for and conditions of the temporary promotion.
 
 
 71
 The clear import of this letter is that Pinar's promotion might be made permanent if he met the requirements stated in the job description, but that it could be terminated for less than cause at any time at the discretion of the agency.
 
 
 72
 Pinar's reliance on Tymshare, Inc. v. Covell, 727 F.2d 1145 (D.C.Cir.1984) for the proposition that this agreement confers only limited discretion to the government is misplaced. In Tymshare the court held that a "compensation plan" giving company officers the right to change a sales representative's commission quota "within their sole discretion" could not be read to confer absolute discretion to reduce the quota for any reason whatsoever where another plausible interpretation of the language is available. The court concluded that "the 'sole discretion' intended was discretion to determine the existence or nonexistence of the various factors that would reasonably justify alteration of the sales quota." Id. at 1154. In reaching this conclusion, however, the court realized that while the phrase "within its sole discretion" is "not necessarily the equivalent of 'for any reason whatsoever, no matter how arbitrary or unreasonable,' [a]s applied to some contractual powers, it may indeed connote the sort of unfettered authority appellant would wish." Id. at 1154. As the court recognized, what controls in interpreting such contractual language is, of course, the intent of the parties. In the instant case Pinar, unlike Tymshare, was a government employee. Unlike Tymshare Pinar was temporarily promoted to fill a temporary need within the agency. The tentative nature of the promotion at issue in this case makes it reasonable to read the agreement between Pinar and the government as intending to reserve to the government the right to terminate the temporary promotion for less than cause, rather than intending to confer some specie of property interest to Pinar. Having failed to show a "legitimate claim of entitlement" to the retention of his temporary promotion, Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. at 2709 (1972), Pinar was not entitled to due process prior to the termination of his temporary promotion.
 
 
 73
 Accordingly, the decision of the district court is
 
 
 74
 AFFIRMED.
 
 
 
 [1]
 At the hearing on the defendants' motion, matters outside the pleadings were presented by the parties which were not excluded by the district court. Accordingly, we treat the court's ruling as one on a motion for summary judgment, Fed.R.Civ.P. 12(b), 56(c), and accept Pinar's version of the facts for purposes of this appeal. Bishop v. Wood, 426 U.S. 341, 347, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976)
 
 
 [2]
 The FAA is a federal agency within DOT
 
 
 [3]
 Pinar won his grievance of the incident and it is not an issue in this case
 
 
 [4]
 On July 30, 1981 Pinar, who was using the telephone in the Sergeant's office area, was told by Sergeants Tyng and Hittle to leave the office area. After leaving, Pinar remembered that he had his weapon. Since FAA procedures specify that an officer must secure his weapon in a gun locker before leaving the station if he is not on duty, Pinar returned to the station, disengaged the cylinder of his weapon and placed it in front of Tyng, requesting that Tyng secure it for him. Tyng refused and an argument ensued. Sergeant Hittle then escorted Pinar to the gun locker to secure his gun
 
 
 [5]
 The procedures available to Bush, which are substantially similar to those currently available to federal employees subjected to "adverse actions," 5 U.S.C. Sec. 7513, included 30 days written notice of the proposed demotion, the right to answer the charges, the right to an agency decision by a higher level official, the trial-type hearing before the Civil Service Commission, and judicial review in either federal district court or the Court of Claims
 
 
 [6]
 These procedures apply to all employees suspended for a period of 14 days or less
 
 
 [7]
 The termination of a temporary promotion within a maximum period of two years, which returns the employee to the position from which temporarily promoted, is specifically excluded from the grievance procedures. (5 C.F.R. Sec. 771.206(c)(vi)). With respect to grievable matters, FAA grievance procedures provided Pinar the right to: file a formal grievance with any written supportive evidence or other information the employee desires; official time to make a personal presentation to the grievance examiner; be represented by the representative of his choice; seek advice from agency personnel; and have a qualified grievance examiner appointed who is not directly or indirectly under the jurisdiction of the official whose action resulted in the grievance. Also, in investigating the grievant's complaint, the examiner may secure documentary evidence or personnel interviews. The employee may make a personal presentation. After the employee is given the opportunity to review the grievance file, the examiner submits a report of findings and recommendations to the grievance official. Within 10 days the grievance official must either: (1) accept the recommendations and issue a decision accordingly; (2) grant the relief sought without regard to the recommendations; or (3) find the examiner's recommendations unacceptable and refer the file to the next higher administrative level for decision. FAA Order 3770.2B, Chapter 4 (June 6, 1980)
 
 
 [8]
 Pinar also argues the grievance procedure through which he challenged his two-day suspension was constitutionally deficient because without violating an agency regulation defendant Jones wrote a memorandum to Halligan, the grievance official, recommending that the grievance examiner's recommendations be rejected. While the opportunity to refute all of the evidence on the basis of which disciplinary action is taken is a right protected by the due process clause, see Doe v. Hampton, 566 F.2d 265, 276-77 (D.C.Cir.1977), the memorandum in question only expressed disagreement with the grievance examiner's conclusion, and did not allege factual matters. Pinar was thus not precluded from rebutting any of the facts upon which the grievance official relied. In addition, Halligan referred the grievance to the next higher level for decision, in accordance with FAA grievance procedures. This case is thus clearly distinguishable from Sullivan v. Department of the Navy, 720 F.2d 1266 (Fed.Cir.1983), wherein the appellant's supervisor, who had motives of reprisal against the appellant for previously accusing him of violating agency regulations sought to pressure the ultimate deciding official into making a decision to remove the appellant from his job. No such retaliatory motive on the part of Jones is present in this case, and since Halligan forwarded the report of the investigation to the next highest level for decision, he was not the "ultimate deciding official."
 
 
 [9]
 In Cutts the D.C. circuit applied its holding in Borrell in finding the district court had jurisdiction over the appellant's claim that her transfer placed an unconstitutional burden on her freedom to marry, which is protected by the Fifth Amendment. However, while recognizing that the issue of whether a new statutory remedy displaces judicially created remedies for constitutional deprivations "turns on whether Congress meant for the new remedy to displace preexisting, judicially-created remedies, and whether the new remedies are adequate to protect the constitutional right at stake," Cutts, 692 F.2d at 140 (emphasis added), the court reached its conclusion without determining whether the statutory remedies afforded adequate protection for the minor personnel action involved
 Nor are we persuaded by the Seventh Circuit's reliance on Borrell to reject the Fifth Circuit's decision in Bush "to the extent that Bush posits that the rights of federal employees qua employees are coterminus with the administrative protections afforded by Congress." Egger v. Phillips, 710 F.2d 292, 298 (7th Cir.1983) (en banc). Egger, decided before the Supreme Court affirmed the Fifth Circuit in Bush, found the Fifth Circuit's opinion "of questionable viability, at best." Id. at 298, n. 5. Moreover, only four of the eight judges voting in Egger concurred in the portion of the opinion on which Pinar relies here. Id., 710 F.2d at 325.
 
 
 [10]
 That Pinar has exhausted his administrative remedies in this case does not render Hallock less persuasive or require that Pinar be afforded additional relief in district court. Certainly, had the court in Hallock felt the available administrative remedies were inadequate to redress the appellant's first amendment claims, or that exhausting such remedies would prove to be an exercise in futility, the court could have ordered the district court to provide relief
 
 
 [11]
 Pinar does not claim he was deprived of a liberty interest