Larry W. BRYANT, Plaintiff–Appellant,

v.

Dick CHENEY, Secretary of Defense; John O. Marsh, Jr., Secretary, Department of the Army, Defendants–Appellees,

and

Donald B. Rice, Secretary of Air Force, Defendant.

No. 89–3332.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 2, 1990.

Decided Jan. 25, 1991.

As Amended Feb. 12, 1991.

James Harold Heller, Kator, Scott & Heller, Washington, D.C., argued for plaintiff-appellant.

John Samuel Koppel, Civ. Div., U.S. Dept. of Justice, argued, Washington, D.C. (Stuart M. Gerson, Asst. Atty. Gen., William Kanter, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Henry E. Hudson, U.S. Atty., Alexandria, Va., and Robert Rigrish, Office of the Judge Advocate Gen., U.S. Army, on brief, Washington, D.C.,), for defendants-appellees.

Before HALL, PHILLIPS, and MURNAGHAN, Circuit Judges.

K.K. HALL, Circuit Judge:

Larry Bryant appeals a judgment entered against him after a bench trial in his action against the Secretaries of Defense and the Army. His suit sought declaratory and injunctive relief against adverse employment actions in retaliation for his attempts to expose an alleged government coverup of visits by unidentified flying objects (UFOs). We affirm the judgment.

I.

Appellant Larry Bryant is a writer who has been a civilian federal employee for over thirty years. Since 1981, he has written stories for the print media section of the Army News Service (ARNEWS). ARNEWS is a wire service that disseminates information to Army installations worldwide for print distribution to local personnel. Bryant is apparently quite talented. His job performance evaluations have been "exceptional" for the past decade except for the year 1985, when his initial evaluation was "unsatisfactory." The 1985 rating is the genesis of this suit.

Bryant is convinced that the government has concealed evidence of UFO visits. He is the director of the Washington, D.C., office of "Citizens Against UFO Secrecy" (CAUS). In 1983, Bryant, on behalf of CAUS, filed a civil action in district court in the District of Columbia styled "Writ of Habeas Corpus Extraterrestrial." In this suit, he sought to compel the Air Force to produce the bodies of space creatures retrieved from crashed flying saucers. This suit was eventually dismissed, but not until it had generated a good deal of publicity.

Many U.S. military installations are served by "civilian enterprise newspapers," which are commercial newspapers published under contract with the government. In late 1984 and early 1985, Bryant submitted paid classified advertisements to some of these newspapers. He sought information from the papers' military audience about the government's alleged coverup of the UFO menace. The advertisements did not use Bryant's name (CAUS was listed), but did give his home address for replies. Some of the advertisements were printed, but others were rejected by the publishers. Bryant has never identified himself as a federal employee in any of these off-duty pursuits.

At ARNEWS, Bryant is supervised by military officers. In late 1984, Captain Thomas Surface was assigned as Chief of ARNEWS. Capt. Surface was directed to change the style and content of ARNEWS' stories to make them more responsive to the interests of their target audience. To further this goal, Capt. Surface assigned a sergeant to edit all news items submitted for publication. As a result, all writers at ARNEWS had an additional layer of editing applied to their work.

When the Fort Dix newspaper would not publish one of his UFO advertisements, Bryant sent a letter to the fort's public affairs officer. The recipient considered the letter rude and intimidating, and the matter moved through Army channels to Colonel Rogers, head of the Command Information Division, which includes ARNEWS. Col. Rogers discussed the matter

with Bryant and satisfied himself that Bryant had not used his official position to attempt to influence the decisions of the newspapers.

Throughout 1985, Capt. Surface repeatedly had to counsel Bryant because of the inferior quality of his stories and his poor attitude toward the new editor. On November 18, 1985, Bryant complained to the Office of Special Counsel of the Merit Systems Protection Board that the criticism of his work was unlawful retaliation for his exercise of his First Amendment right to state his views about the government's investigation of UFOs. Special Counsel found insufficient evidence that a prohibited personnel practice had occurred.

On March 18, 1986, Capt. Surface gave Bryant an "unsatisfactory" performance rating for 1985, the only such appraisal in Bryant's employment history. Bryant filed a grievance concerning the appraisal. The Army's Civilian Appellate Review Agency found that Bryant had not satisfied the performance standards of his job and recommended that the grievance be denied.

Through the summer of 1986, Capt. Surface continued to counsel Bryant on how to improve his work, and on July 18, 1986, at the end of a 120–day probationary period, upgraded Bryant's 1985 rating to "fully successful." The "unsatisfactory" appraisal was expunged from Bryant's Employee Performance File. Capt. Surface and the editor-sergeant were reassigned thereafter, and Bryant has been rated "exceptional" since.

Bryant filed this action in November 1986 against the Secretaries of Defense, Army, and Air Force,[1] seeking a declaration that the original 1985 performance rating was retaliation for his off-the-job protected speech, and an injunction against further retaliations. The district court dismissed the case for lack of jurisdiction on March 16, 1987, and we upheld the dismissal on appeal. *Bryant v. Weinberger*, 838 F.2d 465 (4th Cir.1988). The Supreme Court vacated and remanded for reconsid-

eration in light of *Webster v. Doe*, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988). *Bryant v. Carlucci*, 488 U.S. 806, 109 S.Ct. 37, 102 L.Ed.2d 17 (1988). In turn, this court remanded to the district court for reconsideration. The defendants renewed their motion to dismiss for lack of subject matter jurisdiction. On April 19, 1989, the district court denied the motion. It held that, in the absence of clear language expressing congressional intent to preclude judicial review, an equitable constitutional claim arising from an adverse personnel action may be heard in district court.

The case proceeded to a bench trial. On July 7, 1989, the district court entered judgment for the defendants, accompanied by findings of fact and conclusions of law. Bryant's motion for a new trial or altered judgment was denied, and he appeals.

## II.

The appellees' first defense is offense: they make three arguments that the district court should not even have permitted the case to go to trial.

## A.

This court initially affirmed dismissal of Bryant's claims based on our decision in *Pinar v. Dole*, 747 F.2d 899 (4th Cir.1984), *cert. denied*, 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985). *Pinar* held that federal employees aggrieved by personnel actions are limited to the remedies provided by the Civil Service Reform Act (CSRA).

*Webster v. Doe*, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), for consideration of which the Supreme Court vacated our first ruling in this case, was a suit for equitable relief brought by an ex-CIA employee who had been fired because his homosexuality allegedly made him a "security risk." The National Security Act states that

[T]he Director of Central Intelligence may, in his discretion, terminate the employment of any officer or employee of

---

[1] In another count of the complaint, Bryant sought to compel publication of his advertisements in the civilian enterprise newspapers. This count was settled and dismissed. The Secretary of the Air Force was a defendant only as to that count, and therefore is no longer a party.

the Agency whenever he shall deem such termination necessary or advisable in the interests of the United States.

50 U.S.C. § 403(c). Despite this strong grant of discretion to the Director of the CIA, the Court held that the employee could maintain a constitutional claim in district court (486 U.S. at 603, 108 S.Ct. at 2053):

> We do not think [50 U.S.C. § 403(c)] may be read to exclude review of constitutional claims. We emphasized in *Johnson v. Robison*, 415 U.S. 361 [94 S.Ct. 1160, 39 L.Ed.2d 389] (1974), that where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear.... We require this heightened showing in part to avoid the "serious constitutional question" that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.

*Webster* does not directly control this case, because the CSRA did not apply to the CIA employee in that case. Nonetheless, by vacating this court's previous ruling, the Supreme Court at least suggested that *Webster*'s admonitions might have relevance. On remand, the district court held that the CSRA contains no clear language expressing congressional intent to preclude judicial review of equitable constitutional claims by federal employees arising from adverse personnel actions. The government urges us to reverse this holding and reaffirm *Pinar*.

■ There is some tension among the circuits on this issue.[2]  *Compare* dicta in *Spagnola v. Mathis*, 859 F.2d 223, 229–30 (D.C.Cir.1988) (en banc) (judicial review of equitable constitutional claims not "altogether" precluded by CSRA), *with Lombardi v. SBA*, 889 F.2d 959, 961–62 (10th Cir.1989) (CSRA displaces action for injunctive relief, without citing *Webster*), and *Stephens v. Dep't of Health and Human Services*, 901 F.2d 1571, 1576 (11th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 555, 112 L.Ed.2d 562 (1990) (mandamus unavailable because of CSRA remedy). Because of the weight and difficulty of the issue and our affirmance on other grounds, we decline to address the continuing vitality of *Pinar* in this case.[3]

### B.

■ The appellees assert that Bryant lacks standing to seek declaratory or injunctive relief. They rely on *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). *Lyons* was an action brought by a man who claimed that the Los Angeles police had placed a chokehold on him. He sought declaratory and injunctive relief against the use of such

---

**2.** Resolution of this issue is made more difficult by a distinction the Supreme Court seems to have drawn between *Bivens* actions for damages and equitable claims for injunctive or declaratory relief. The former are precluded by CSRA notwithstanding that they are by definition "constitutional" claims. *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983).

**3.** Appellees also argue that the district court should have granted them summary judgment because a plaintiff/employee in a First Amendment case must show that he has suffered dismissal or "the substantial equivalent of dismissal" in order to state a cognizable claim. *Delong v. United States*, 621 F.2d 618, 624 (4th Cir. 1980). We hesitate to apply *Delong* to bar this suit, because an intervening Supreme Court case has rejected the "substantial equivalent of dismissal" test under analogous circumstances:

> The Seventh Circuit proposed that only those employment decisions that are the "substantial equivalent of a dismissal" violate a public employee's rights under the First Amendment. We find this test unduly restrictive because it fails to recognize that there are deprivations less harsh than dismissal that nevertheless press state employees and applicants to conform their beliefs and associations to some state-selected orthodoxy. The First Amendment is not a tenure position, protecting public employees from actual or constructive discharge. The First Amendment prevents the government, except in the most compelling circumstances, from wielding its power to interfere with its employees' freedom to believe and associate, or to not believe and not associate.

*Rutan v. Republican Party of Illinois*, —— U.S. ——, 110 S.Ct. 2729, 2737–38, 111 L.Ed.2d 52 (1990). As with the government's CSRA preclusion argument, we note only that a precedent of this court has been placed into some doubt by an intervening Supreme Court ruling, but we leave reexamination of our precedent until the facts of some future case necessitate it.

holds by the police. The Supreme Court held that, without a showing that Lyons faced a real and immediate threat of again being choked, he lacked standing to seek equitable relief.

The *Lyons* rule is a variation on an old theme—Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies. Doctrines like standing, mootness, and ripeness are simply subsets of Article III's command that the courts resolve disputes, rather than emit random advice. The courts should be especially mindful of this limited role when they are asked to award prospective equitable relief instead of damages for a concrete past harm, and a plaintiff's past injury does not necessarily confer standing upon him to enjoin the possibility of future injuries.

> Abstract injury is not enough. The plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged official conduct and the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical."

> \*    \*    \*    \*    \*    \*

> Although it was claimed in [*O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974),] that particular members of the plaintiff class had actually suffered from the alleged unconstitutional practices, we observed that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Id.*, at 495–496 [94 S.Ct. at 676]. Past wrongs were evidence bearing on "whether there is a real and immediate threat of repeated injury." *Id.*, at 496 [94 S.Ct. at 676]. But the prospect of future injury rested "on the likelihood that [plaintiffs] will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners." *Ibid.*

*Lyons*, 461 U.S. at 101–03, 103 S.Ct. at 1664–66. *Accord, Rizzo v. Goode*, 423 U.S. 362, 372, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976); *Golden v. Zwickler*, 394 U.S. 103, 109, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969).

We agree with the appellees that Bryant lacks standing under *Lyons*. Bryant's advertisements have been printed in the civilian enterprise newspapers. His "unsatisfactory" rating for 1985 has been expunged. The author of that rating, Capt. Surface, has been reassigned, and Bryant's current supervisors have given him stellar evaluations. In essence, Bryant is now asking us for a declaration that an expunged employment evaluation was unlawful and for an injunction against adverse treatment that he can show no indication will recur. The injunctive and declaratory powers of the federal courts are broad and vital to justice, but Article III simply precludes their empty use to enjoin the conjectural or declare the fully repaired broken.

### III.

Though we affirm because of the constraints of Article III, we would be remiss if we did not note that Bryant's claims were fully tried and found wanting on their merits. The district court found that Bryant failed to prove that his protected speech was a substantial or motivating factor prompting the adverse employment action. The court then went on to find that even had Bryant made such a showing, the defendants had satisfied their burden of proving that the same action would have been taken notwithstanding the protected First Amendment conduct. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

In short, Bryant lacks Article III standing to seek the requested relief, but his claims were nonetheless heard and rejected. The judgment of the district court is affirmed.

AFFIRMED.