**Donald FRANCISCO, Plaintiff,**

**v.**

**Bernhart SCHMIDT, et al., Defendants.**

**Civ. A. No. 81–C–44.**

United States District Court,
E.D. Wisconsin.

Dec. 16, 1983.

See also, D.C., 532 F.Supp. 850.

Matthew R. Robbins, Milwaukee, Wis., for plaintiff.

Joseph P. Stadtmueller, U.S. Atty. by James Wm. Morrison, Barbara B. Berman, Asst. U.S. Attys., Milwaukee, Wis. and Curtis L. Bentz, Major, U.S.A.F., Washington, D.C., for defendants.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action under the doctrine established in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619. On February 23, 1982, the Court granted summary judgment for the defendants with respect to plaintiff's Fifth Amendment claim. 532 F.Supp. 850. However, I declined to enter judgment for the defendants on plaintiff's First Amendment claim. The defendants' motion to reconsider that order was denied on May 6, 1982. The defendants have renewed their efforts to persuade the Court that the First Amendment claim should be dismissed. This time, the motion is granted.

The salient facts are as follows. The plaintiff was hired on January 22, 1980, to serve as an electrician for the United States Army at Fort McCoy, Wisconsin. His status in that position was that of a probationary employee, and his term was to last for one year. In March of that year, he was transferred to the 440th Tactical Air Wing at General Billy Mitchell Field in Milwaukee, where he served as an electrician. His status remained that of a probationary employee for one year. By May, 1980, the plaintiff had become concerned about misuse and misappropriation of property and mismanagement at Mitchell Field. He discussed these problems with his supervisors, defendants Schmidt and Kolwitz. Later, he and two fellow employees brought these problems to the attention of Brigadier General Balch, and wrote letters to other Air Force officials and Senator William Proxmire. Brigadier General Balch advised plaintiff that his statements would be held in confidence and that no retaliatory measures would be taken. An investigation of the air field by the Air Force Office of Special Investigations ensued.

Defendants Kolwitz and Schmidt soon learned of plaintiff's statements and commenced a program of retaliation against him. On May 28, 1980, the plaintiff received a warning letter from defendant Schmidt. On September 3, 1980, Schmidt notified the plaintiff that he would be separated from his position. Brigadier General Balch revoked this notice. One month later, defendant True sent plaintiff a notice of reprimand. Finally, on November 7, 1980, plaintiff was again notified by defendant Schmidt that he would be separated from his position for using abusive language, failing to follow directions and displaying insubordination, an uncooperative attitude and a lack of technical competence.

The plaintiff requested that defendant True review his separation. On November 14, 1980 plaintiff appeared before True and presented orally his reasons for challenging the separation. By letter dated November 18, 1980 defendant True advised plaintiff that his employment would be terminated on November 21, 1980.

Defendant bases its present motion on the Supreme Court's recent decision in *Bush v. Lucas*, —— U.S. ——, 103 S.Ct. 2404, 76 L.Ed.2d 648 (U.S.1983). The plaintiff in *Bush* was a tenured employee at the George C. Marshall Space Flight Center, a facility operated by the National Aeronautics and Space Administration. After being reassigned to new positions on two occasions, Mr. Bush made several statements to the press that were highly critical of his employer. The director of the Center, Mr. Lucas, determined that the statements were false and misleading, and demoted Mr. Bush to a lower-paying grade. The Supreme Court assumed that this action violated Bush's First Amendment rights, but affirmed a judgment for Lucas. Viewing the issue before it as one of " 'federal personnel policy,' " at ——, 103 S.Ct. at 2411, the court reviewed the history of the development of civil service remedies, and determined that it would be improper to augment the existing remedial structure with a judicial remedy:

"... we decline 'to create a new substantive legal liability without legislative aid and as at the common law,' ... because we are convinced that Congress is in a better position to decide whether or not the public interest would be served by creating it."

*Id.* at ——, 103 S.Ct. at 2417 (citation omitted). The issue presently before me is whether the rationale of *Bush* extends to actions by probationary federal employees who are excluded from the statutory remedial scheme. I conclude that it does.

■ Actions under the doctrine of *Bivens* may be defeated in two situations: 1) where the defendants demonstrate special factors counseling hesitation in the absence of affirmative Congressional action; and 2) where the defendants show that Congress has provided an alternative remedy that is declared to be a substitute for recovery under the Constitution and is viewed as equally effective. *Bivens*, 403 U.S. at 396–397, 91 S.Ct. at 2004–2005; *Davis v. Passman*, 442 U.S. 228 at 245–247, 99 S.Ct. 2264 at 2277–2278, 60 L.Ed.2d 846 (1979); *Carlson v. Green*, 446 U.S. 14 at 18–19, 100

S.Ct. 1468, 1471–1472, 64 L.Ed.2d 15 (1980). In *Bush*, the remedial scheme that Congress provided, *see* 5 U.S.C. §§ 2302, 7511 *et seq.* (Supp. V 1981), was concededly not entirely as effective as a *Bivens*-type remedy, nor did Congress expressly deny such a remedy or declare the statutory scheme to be a substitute. Rather, the court framed its analysis in terms of the special factors that counseled hesitation on the facts before it. The fact that the case involved the relations between the Government and its employees was determined to be such a special factor and, indeed, this special factor was decisive. In the Court's view, Congress was in a better position evenhandedly to assess the impact and desirability of a new species of litigation by federal employees.

Neither the plaintiff nor the defendants in the present case argue that the plaintiff had recourse to the protections afforded his nonprobationary coworkers. Indeed, the statutes expressly exclude probationary employees from coverage. *See, e.g.,* 5 U.S.C. §§ 7501(1), 7511(a)(1)(A) (Supp. V 1981). Thus, as in *Bivens* and *Davis*, it is damages or nothing for the plaintiff. *See* also *Sonntag v. Dooley*, 650 F.2d 904 (7th Cir.1981). It is this aspect of the case that plaintiff urges in opposition to the present motion.

■ However, a *Bivens*-type action can be defeated in *either* of the two situations under discussion. Moreover, as in *Bush*, the fact that the federal employer-employee relationship is involved is a special factor that counsels hesitation, and this is so notwithstanding Congress's decision to exclude probationary employees from its remedial scheme. The Supreme Court has determined that Congress is in a superior position for balancing the competing policy considerations in the context of federal employment disputes. It stands to reason that Congress's decision to exclude probationary employees from the statutory remedial scheme reflects an assessment of those considerations as they pertain to employees who have not fully demonstrated their com-

petence or ability to interact with their co-workers and superiors. I should be hesitant, therefore, to create a judicial remedy where Congress has determined that no statutory remedy should lie.

Indeed, to create a judicial remedy here would give rise to the anomaly that probationary employees have a means of redress that is potentially more effective than the means available to nonprobationary employees. For example, nonprobationary employees must proceed within the confines of the regulations promulgated under 5 U.S.C. § 7513. Under those regulations, the employee's entitlement to a formal hearing with examination of witnesses is a matter within the particular agency's discretion. 5 C.F.R. § 752.404(c)(2) (1983). There is no provision for a trial by jury, or for punitive damages. This contrasts sharply with the full-blown trial that plaintiff requests in the present case. Congress, by excluding probationary employees from the statutory remedial structure, could not have intended those employees to enjoy a more effective right of action than the employees within the statutory ambit.

Finally, insofar as *Egger v. Phillips*, 710 F.2d 292 (7th Cir.1983) (*en banc*), suggests a contrary result, it is no longer the law in this circuit. That case antedated *Bush v. Lucas*, and its discussion of *Bivens* must be scrutinized in light of the Supreme Court's more recent pronouncement. Because I find *Bush* to be persuasive on these facts, I conclude that plaintiff does not have a cause of action.

THEREFORE, IT IS ORDERED that defendants' motion to dismiss is granted.