Louciene WATSON, Plaintiff,

v.

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., Defendants.

No. 83 C 5634.

United States District Court, N.D. Illinois, E.D.

Dec. 28, 1983.

---

David R. Smith, Lisle, Ill., David G. Wilkins, Strauss, Sulzer, Shopiro & Wilkins, Chicago, Ill., for plaintiff.

Dan K. Webb, U.S. Atty., Mary Anne Mason, Asst. U.S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

BUA, District Judge.

On August 15, 1983, Louciene Watson filed this six-count complaint against his employer, the United States Department of Housing and Urban Development ("HUD") and various supervisory personnel also employed by HUD. The complaint charges HUD and its officials with unlawfully transferring Watson from his position as HUD Regional Director of the Office of Fair Housing in Chicago to the position of Director of Debt Management at the HUD Regional Office in Seattle. On August 19, 1983, Watson filed a motion for a preliminary injunction seeking a stay of his proposed transfer to Seattle. After a hearing on August 29, 1983, the Court denied Watson's motion due to his failure to establish a reasonable likelihood of success on the merits and irreparable injury. *Watson v.*

*U.S. Dept. of Housing and Urban Development, et al.,* 569 F.Supp. 846 at 848 (N.D.Ill.1983).

Presently before the Court is defendants' motion to dismiss the complaint for lack of jurisdiction and failure to state a claim upon which relief can be granted. For the reasons stated below, defendants' motion to dismiss is granted and Watson's complaint is hereby dismissed.

## I. FACTS

The following facts are alleged in Watson's complaint. For purposes of this motion, the Court assumes they are true. *City of Milwaukee v. Saxbe,* 546 F.2d 693, 704 (7th Cir.1976).

Between 1973 and June 6, 1983, Watson was employed at the HUD Chicago Regional Office as the Director of the Office of Fair Housing. In September of 1981, defendant James Cummings was appointed as Administrator of HUD's Chicago Regional Office. Soon after his appointment, Cummings was investigated by the Office of Special Counsel ("OSC") regarding charges that Cummings wrongfully transferred certain HUD employees to Indianapolis (hereinafter the "Cummings investigation"). Watson was interviewed by the OSC during the Cummings investigation and later testified before an Administrative Law Judge. In 1982, Cummings was transferred from the Chicago Regional Office to the position of Director, Office of Voluntary Compliance at the HUD central office in Washington, D.C.

Although Watson was consistently rated "above average or higher" in his job performance at Chicago, Watson "became aware of several rumors" that Cummings "would get Watson" because of Watson's testimony before the Administrative Law Judge. In late 1982, Watson and other HUD employees who testified before the Administrative Law Judge heard rumors that they would be transferred because of their testimony against Cummings. After Cummings obtained a favorable ruling from the Administrative Law Judge in April of 1983, Watson again heard rumors

that his transfer to Seattle was imminent. During the Spring of 1983, Cummings again told several persons that he would "get Watson" because of Watson's testimony before the Administrative Law Judge.

On June 6, 1983, Watson received a letter from defendant Judith Tardy, Assistant Secretary of HUD, informing Watson that he would be transferred to the position of Director, Debt Management, at the Seattle Regional Office at the same pay level and grade as his Chicago position, effective July 10, 1983. The next day Watson received a letter informing him that he was temporarily assigned to the position of Special Assistant to the Regional Administrator pending his transfer to Seattle.

On June 13 or 14, 1983, Watson filed a complaint with the OSC alleging that his reassignment to the Seattle office was punishment in retaliation for testimony given to the OSC. On August 3, 1983, the OSC concluded:

> ... [N]o prohibited personnel practice occurred in this matter. Rather, the investigation showed that the reassignment was a legitimate HUD management decision made in connection with the rotation of two other employees, one of whom will be relocated to Chicago.

Plaintiff's Supplemental Affidavit filed August 26, 1983, at Exhibit 8.

In his six-count complaint before this Court, Watson predicates defendants' liability upon several legal theories. Count I charges that defendants, by transferring Watson to Seattle, violated 5 U.S.C. § 2301(b)(2), (8);[1] 5 U.S.C. § 2302(b)(8);[2] and the due process clause of the fifth amendment to the United States Constitution. Count II alleges that defendants, in violation of Watson's first amendment rights, transferred Watson to Seattle as punishment for Watson's cooperation with the Cummings investigation. Counts III, IV and V charge that defendants, in violation of 42 U.S.C. §§ 1985(1), (3) and 1986, conspired to intimidate Watson and wrongfully prevent him from discharging his duties as Director of the Regional Office of Fair Housing and Equal Opportunity. Count VI charges that defendants, in violation of 42 U.S.C. § 3617,[3] intimidated Wat-

---

1. 5 U.S.C. § 2301(b)(2) and (8) provide:

(b) Federal personnel management should be implemented consistent with the following merit system principles:

\* \* \* \* \* \*

(2) All employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management without regard to political affiliation, race, color, religion, national origin, sex, marital status, age, or handicapping condition, and with proper regard for their privacy and constitutional rights.

\* \* \* \* \* \*

(8) Employees should be—

(A) protected against arbitrary action, personal favoritism, or coercion for partisan political purposes, and

(B) prohibited from using their official authority or influence for the purpose of interfering with or affecting the result of an election or a nomination for election.

2. 5 U.S.C. § 2302(b)(8) provides that:

(b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—

\* \* \* \* \* \*

(8) take or fail to take a personnel action with respect to any employee or applicant for employment as a reprisal for—

(A) a disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—

(i) a violation of any law, rule, or regulation, or

(ii) mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety,

if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs; or

(B) a disclosure to the Special Counsel of the Merit Systems Protection Board, or to the Inspector General of an agency or another employee designated by the head of the agency to receive such disclosures, of information which the employee or applicant reasonably believes evidences—

(i) a violation of any law, rule, or regulation, or

(ii) mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. . . .

3. 42 U.S.C. § 3617 provides:

son on account of his efforts to aggressively enforce the Fair Housing Act, 42 U.S.C. § 3601 et seq. Watson seeks injunctive relief restoring him to his position in Chicago, actual damages in the amount of $500,-000.00 and punitive damages in the amount of $250,000.00.

## II. DISCUSSION

### A. The Civil Service Reform Act

■ The Civil Service Reform Act of 1978 ("CSRA") provides that federal employees subject to certain "adverse actions" by their employer may appeal that adverse decision to the Merit Systems Protection Board ("MSPB"). 5 U.S.C. § 7513(d). Judicial review of the MSPB is provided by 5 U.S.C. § 7703. These "adverse actions," however, include removals, suspensions, reductions in pay and furloughs, but not reassignments within the same pay grade. 5 U.S.C. §§ 7512, 7513, 4303(e); *Broadway v. Block*, 694 F.2d 979, 982 (5th Cir.1982).

■ Although not classified as "adverse actions," reassignments may constitute a "prohibited personnel practice" as defined by 5 U.S.C. § 2302.[4] A federal employee subject to a "prohibited personnel practice" may file a complaint with the Office of Special Counsel of the MSPB ("OSC"). The OSC is required to investigate the employee's complaint and to determine whether reasonable grounds exist to support the employee's claim. If the OSC investigation results in a finding of prohibited personnel practice, the OSC may seek relief before the MSPB. 5 U.S.C. § 1206(a)–(c). Unlike the statutory provisions that provide for judicial review of the MSPB, however, there are no statutory provisions providing for judicial review of the OSC. *Broadway,*

694 F.2d at 982; *Gilley v. United States,* 649 F.2d 449, 453 (6th Cir.1981).

### B. Due Process Claim

In his complaint, Watson sets forth numerous facts attempting to establish that HUD's decision to transfer him to Seattle was arbitrary and capricious and deprived Watson of a cognizable property interest without due process of law. Although not alleging any procedural irregularity in the manner in which he was transferred, Watson asserts that defendants' motives were not for the "good of the service" but rather were to punish Watson for his involvement in the Cummings investigation.

■ In order to succeed on his due process claim, Watson must show that he has a cognizable property or liberty interest in not being reassigned. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Absent a promise of continued employment without reassignment, a government employee may be transferred without due process protections. *Broadway v. Block*, 694 F.2d 979, 985 (5th Cir.1982); *Bullard v. Webster*, 623 F.2d 1042, 1047 (5th Cir.1980). Although Watson has pled facts which suggest that HUD's decision to transfer him may have been unwise, the complaint does not allege that Watson had any entitlement to remain at the Chicago office. Since Watson has failed to establish any cognizable property interest in not being reassigned, his due process claim based on a deprivation of a property interest is without merit.

■ Furthermore, Watson's reassignment did not infringe any constitutionally protected liberty interest. As in *Roth*, the government has not made any charge against Watson that might seriously damage his standing in the community, such as

---

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title. This section may be enforced by appropriate civil action.

4. 5 U.S.C. § 2302(a)(2) provides:
 (2) For the purpose of this section—
 (A) "personnel action" means—
 *　　*　　*　　*　　*　　*
 (iv) a detail, transfer, or reassignment;

a charge of dishonesty or immorality. Watson's reliance upon defendants' alleged violations of 5 U.S.C. § 2301(b)(2), (8) and 5 U.S.C. § 2302(b)(8) are insufficient to establish a cognizable property or liberty interest under the due process clause of the fifth amendment.[5]

The cases relied upon by Watson in support of his due process claim are not persuasive. In *McClelland v. Andrus*, 606 F.2d 1278 (D.C.Cir.1979), the plaintiff refused to transfer to a new position as requested by the government and was then discharged from government service. The plaintiff in *McClelland*, therefore, not only suffered an "adverse action" as defined by 5 U.S.C. § 7512, but was also deprived of a cognizable property interest as defined by *Roth*. Watson, unlike the employee in *McClelland*, has not been discharged and therefore has not been deprived of a cognizable property interest.

*Motto v. General Services Administration*, 335 F.Supp. 694 (E.D.La.1971), also relied upon by Watson, held that an involuntary transfer of a government employee could be considered an "adverse action" and entitle the employee to a hearing. If *Motto* is controlling, Watson's suit is premature because he failed to file an appeal of his transfer with the MSPB under 5 U.S.C. § 7513(d). However, *Motto*, decided seven years before the CSRA was enacted, is not a correct reading of the present law. *Cf. Broadway v. Block*, 694 F.2d 979, 982 (5th Cir.1982); *Delong v. United States*, 621 F.2d 618, 624 (4th Cir.1980).

▓ Accordingly, Watson's due process claim is without merit. The allegations contained in the complaint—which suggest that defendants' decision to transfer Watson was arbitrary and capricious—fail to establish that Watson had any cognizable property or liberty interest in retaining his Chicago position. The transfer of government employees, unlike removals and other

"adverse actions," is left to administrative discretion and not reviewable by this Court. *See Broadway v. Block*, 694 F.2d 979, 984 (5th Cir.1982). In explaining Congress' rationale for leaving transfer decisions to the agency's discretion, the Fifth Circuit stressed:

> In balancing conflicting needs for efficiency and employee protection, [Congress] chose to make certain severe personnel actions, namely "adverse actions," subject to judicial review, while leaving other "personnel actions," including reassignments, to administrative discretion.

*Broadway*, 694 F.2d at 984.

### C. First Amendment Claim

The essence of Watson's complaint is that the decision to transfer him was made by defendants in retaliation for Watson's participation in official proceedings before the OSC and the MSPB. Watson argues that his complaint states a cause of action under the first amendment and that this Court has authority to fashion à damage remedy under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In reply, defendants argue that the Supreme Court's recent decision in *Bush v. Lucas*, —— U.S. ——, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), bars Watson's first amendment claim.

In *Bush*, the Supreme Court held that a federal employee subject to retaliatory demotion cannot bring a first amendment claim against the government in federal court. The Court reasoned:

> Because such claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, we conclude that it would be inappropriate

---

**5.** Nor would alleged violations of 5 U.S.C. § 2301(b)(2), (8) or 5 U.S.C. § 2302(b)(8) create an implied private cause of action for Watson. Courts are very reluctant to imply a private cause of action under the CSRA. *See, e.g.,*

*Broadway v. Block*, 694 F.2d 979, 984 (5th Cir. 1982); *Borrell v. United States International Communications Agency*, 682 F.2d 981, 988 (D.C.Cir.1982).

for us to supplement that regulatory scheme with a new judicial remedy.

\* \* \* \* \* \*

Constitutional challenges to agency action, such as the First Amendment claims raised by petitioner, are fully cognizable within this system.

*Bush,* —— U.S. at ——, ——; 103 S.Ct. at 2406, 2415.

 Watson, however, argues that *Bush* is distinguishable from this case because, unlike Bush, Watson has not been demoted and therefore cannot take advantage of the "elaborate, comprehensive scheme" available to demoted federal employees. *See Bush,* —— U.S. at ——, 103 S.Ct. at 2415. Although it is true that Watson does not have available to him the same administrative safeguards that were available to Bush, in light of the Fifth Circuit's opinion in *Broadway v. Block,* 694 F.2d 979 (5th Cir.1982), this Court holds that the administrative remedies available to Watson are sufficiently adequate to require Watson to present his first amendment claim within that administrative process.

In *Broadway v. Block,* 694 F.2d 979 (5th Cir.1982), the Fifth Circuit refused to extend a *Bivens* remedy to a federal employee reassigned within the same pay scale. *Id.* at 985. The Court, relying upon its decision in *Bush v. Lucas,* 647 F.2d 573 (5th Cir.1981), *aff'd,* —— U.S. ——, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), stated:

The reasoning of *Bush* and *Broussard* [*v. United States,* 674 F.2d 1103 (5th Cir.1982)] applies with greater force to the facts of this case than it does to the facts of these earlier cases. Here the deprivation is less serious—a reassignment compared to a demotion in *Bush* and a termination in *Broussard*—while the violence done to the administrative scheme by allowing plaintiffs to sue directly in federal court is greater, since reassignments are no doubt more routine than demotions and terminations, and since demotions and terminations are already subject to some judicial review under the CSRA.

*Id.* at 985. Given the important policy of not unnecessarily interfering in federal employment practices (*See Bush,* 103 S.Ct. at 2417), the Court holds that Watson's alleged retaliatory transfer presents "special factors counselling hesitation" in extending a *Bivens* action under the first amendment. *See Carlson v. Green,* 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980). Watson's administrative remedies—filing a complaint with the OSC and appealing to the MSPB should he refuse the transfer and be discharged—are sufficiently adequate remedies to require Watson to bring his first amendment claim in the administrative forum. *See Bush,* —— U.S. at ——, 103 S.Ct. at 2416–17.

### D. Civil Rights Claims

 In counts III, IV and V of the complaint, Watson charges that defendants, in violation of 42 U.S.C. §§ 1985(1), (3) and 1986, conspired to intimidate Watson and wrongfully prevent him from discharging his duties as Director of the Chicago Office of Fair Housing and Equal Opportunity. Complaints filed under the Civil Rights Act, 42 U.S.C. § 1981 *et seq.,* must establish "particularized facts demonstrating a constitutional deprivation." *Cohen v. Illinois Institute of Technology,* 581 F.2d 658, 663 (7th Cir.1978). Further, a plaintiff must allege "some facts that demonstrate that his race was the *reason* for defendants' inaction." *Jafree v. Barber,* 689 F.2d 640, 643 (7th Cir.1982). As Watson has failed to allege any facts which suggest that defendants' conduct was racially motivated, Counts III, IV and V fail to state a cause of action.

### E. Fair Housing Act Claim

In Count VI of the complaint, Watson alleges that defendants, in violation of 42 U.S.C. § 3617, transferred him to Seattle because of his "aggressive and successful" enforcement of the fair housing laws. In support, Watson asserts that defendants' motivation behind their decision to transfer him to Seattle was a "desire to intimidate plaintiff on account of his having aided or

encouraged persons in the exercise and enjoyment of rights granted or protected by the federal fair housing laws, 42 U.S.C. § 3601, et seq." Complaint, ¶ 84. Defendants argue that Count VI should be dismissed because no private cause of action exists for damages under 42 U.S.C. § 3617.

▋ Title VIII of the Fair Housing Act, 42 U.S.C. § 3617 provides:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title. This section may be enforced by appropriate civil action.

Notwithstanding defendants' assertion that "Watson's claim under § 3617 appears to be one of first impression," private actions for damages have been maintained under § 3617 in numerous reported decisions. *See, e.g., Crumble v. Blumthal,* 549 F.2d 462, 468–49 (7th Cir.1977); *Smith v. Stechel,* 510 F.2d 1162, 1164 (9th Cir.1975); *United States General, Inc. v. Joliet,* 432 F.Supp. 346, 355 (N.D.Ill.1977); *Meadows v. Edgewood Management Corp.,* 432 F.Supp. 334 (W.D.Va.1977). In this case, however, Watson's § 3617 claim arises out of his employment with the federal government. As noted in section C, *supra,* Watson has administrative remedies available before the OSC if the allegations in Count VI are found to have merit. Furthermore, should Watson refuse to relocate to Seattle, he will apparently be discharged from federal service and, at that time, he will have available the full procedural and substantive protections of the CSRA as described in *Bush v. Lucas,* —— U.S. ——, ——, 103 S.Ct. 2404, 2415–16, 76 L.Ed.2d 648. Like his first amendment claim, Watson's § 3617 claim is fully cognizable before the administrative procedures provided by the CSRA.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted and plaintiff's complaint is hereby dismissed.

IT IS SO ORDERED.