**Frank K. KOTARSKI,**
**Plaintiff-Appellant,**

v.

**V.L. COOPER, A.E. Navarro, W.J. Tinston, J.H. Kirkpatrick, Naval Air Rework Facility, Capt. P.A. Monroe, in his official capacity, Defendants-Appellees.**

**No. 84–5673.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 11, 1985.

Decided Sept. 16, 1986.

Frank K. Kotarski, in pro. per.

Richard A. Olderman, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Before NELSON, CANBY and HALL, Circuit Judges.

CANBY, Circuit Judge:

Plaintiff, a civilian employee of the Navy, was promoted to a supervisory position subject to a probationary period of one year. He was demoted to his former position during that year, and brought this action in district court to contest his demotion and seek *Bivens* [1] damages for it. The district court dismissed his complaint with prejudice, and plaintiff appeals. We reverse.

## BACKGROUND

In 1981, plaintiff Frank Kotarski was promoted from his position as a GS–12 civilian Navy engineer to the position of GM–13: industrial engineer with supervisory responsibilities. This competitive appointment was subject to a probationary period of one year. 5 U.S.C. § 3321; 5 C.F.R. § 315.802(a) *et seq.* Toward the close of this period, Kotarski's immediate superiors, defendants here, notified him that his performance as a supervisor had been unsatisfactory. Kotarski was accordingly returned to his prior position.

Shortly thereafter, Kotarski filed this action against defendants, seeking reinstatement, back pay, and *Bivens* damages for his demotion. He also sought review of the agency action under the Administrative Procedure Act. The complaint alleged that defendants had violated Kotarski's first, fifth and ninth amendment rights by demoting him from his position as supervisor. Five months later, Kotarski filed a second action alleging that his demotion also violated his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16. That action is still pending in district court. The district court disposed of this first action by dismissing it with prejudice, upon the government's motion. This appeal followed.

## DISCUSSION

### A. *Jurisdiction*

▮ In addition to seeking *Bivens* damages against his immediate superiors and review of the agency action under the Administrative Procedure Act, Kotarski seeks reinstatement and back pay from defendant Naval Air Rework Facility, an instrumentality of the United States. Although Kotarski's prayer for relief does not specify the amount of back pay sought, we conclude that it would exceed $10,000. *See Doe v. United States Dept. of Justice*, 753 F.2d 1092, 1101 (D.C.Cir.1985). As a result, the district court was without jurisdiction over Kotarski's back pay claim. The Tucker Act, 28 U.S.C. § 1346(a)(2), requires that such actions be brought in the United States Claims Court.[2] The claim against the Facility for reinstatement is so integrated with the claim for back pay, that it must likewise be entertained in the Claims Court. *See Schulthess v. United States*, 694 F.2d 175, 178 (9th Cir.1982); *Giordano v. Roudebush*, 617 F.2d 511, 514–15 (8th Cir.1980). Accordingly, we remand these claims to the district court for consideration of whether the interests of justice require transfer of Kotarski's back

---

1. In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court implied a damage remedy against federal officers for the violation of plaintiff's fourth amendment rights. *Id.* at 390–97, 91 S.Ct. at 2001–5. The *Bivens* doctrine has been progressively expanded to embrace other constitutional violations. *See Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (equal protection); *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (eighth amendment);

*see generally* K. Davis, *Administrative Law Treatise,* § 27:26 (1984).

2. For a Tucker Act claim to be brought in the district court, it must (1) seek money (2) not exceeding $10,000 (3) from the United States and (4) be founded either upon a contract or provision of federal law or regulation that can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained. *See Van Drasek v. Lehman,* 762 F.2d 1065, 1068 (D.C.Cir.1985).

pay and reinstatement claims to the Claims Court. *See* 28 U.S.C. § 1631.[3]

■ There is no problem, however, with the district court's jurisdiction over Kotarski's constitutional claims against the individual defendants. *Bivens* actions brought against federal officials in their individual capacities for violations of a plaintiff's constitutional rights are not suits requiring the consent of the United States. The Tucker Act is therefore not implicated. *Van Drasek v. Lehman,* 762 F.2d 1065, 1070 (D.C.Cir.1985); *Doe,* 753 F.2d at 1101. The district court therefore properly entertained Kotarski's *Bivens* claims.

### B. *Title VII as Exclusive Remedy*

The district court dismissed Kotarski's *Bivens* claims on two alternative grounds. The first was that Kotarski's exclusive remedy lay in Title VII, 42 U.S.C. § 2000e–16. We disagree.

■ Title VII bars discrimination in employment on the basis of race, color, religion, sex, or national origin. 42 U.S.C. §§ 2000e–2, 2000e–16. As the district court correctly observed, the Supreme Court has held that Title VII is the exclusive remedy for claims of discrimination in federal employment. *Brown v. General Services Administration,* 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976). That exclusive effect, however, extends only to claims of federal employees that are cognizable under Title VII. *See Davis v. Passman,* 442 U.S. 228, 247 n. 26, 99 S.Ct. 2264, 2278 n. 26, 60 L.Ed.2d 846 (1979). As a consequence, "Title VII does not preclude separate remedies for unconstitutional action other than discrimination based on race, sex, religion or national origin." *White v. General Services Administration,* 652 F.2d 913, 917 (9th Cir.1981).

■ Kotarski has alleged that he was demoted because his superiors disapproved of his private relationship and living arrangements with his woman friend, in violation of his constitutional right of privacy. He also alleges that he was demoted because of his expression of disagreement with certain policies, practices and expenditures of funds at the Naval Air Rework Facility, in violation of his first amendment rights.[4] Neither of these claims is cognizable under Title VII; accordingly, they are not barred by its preclusive effect.

■ Defendants contend, however, that Kotarski effectively admitted that his *Bivens* claims were subsumed by his Title VII claim when he filed an affidavit in his Title VII action in which he did "swear and contend" that his involvement in an EEO complaint filed by his woman friend was "the primary reason" for his demotion. We decline to give this affidavit the effect that the defendants urge for it. The affidavit states a contention, and it was sworn on information and belief. It does not state that retaliation for participation in filing an EEO complaint was the *only* reason for Kotarski's demotion. We fail to see how Kotarski's pursuit of a Title VII remedy based on retaliation, *see White v. General Services Administration,* 652 F.2d at 917, can preclude his *Bivens* claims based on alleged constitutional infractions

---

3. We decline to transfer the claims ourselves, *cf. Van Drasek, supra; Wronke v. Marsh,* 767 F.2d 354 (7th Cir.1985) (transferring to Federal Circuit under 28 U.S.C. § 1631), because Kotarski may wish to seek the leave of the district court to amend his complaint to waive damages in excess of $10,000 and proceed in district court. *See Hahn v. United States,* 757 F.2d 581, 587–88 (3d Cir.1985); *Van Drasek,* 762 F.2d at 1069 n. 6. If Kotarski reduces his claim to $10,000 or less and pursues it in the district court under the Tucker Act, appellate review of that claim may be had only in the Court of Appeals for the Federal Circuit. *See* 28 U.S.C. § 1295(a)(2).

4. The district court did not reach the merits of these constitutional claims, nor do we. *Cf. Doe v. Duling,* 603 F.Supp. 960 (E.D.Va.1985) (state statutes prohibiting fornication and cohabitation by unmarried adults unconstitutional), *vacated on other grounds,* 782 F.2d 1202 (4th Cir.1986); *see also Thorne v. City of El Segundo,* 726 F.2d 459 (9th Cir.1983), *cert. denied,* 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984); *Wilson v. Taylor,* 733 F.2d 1539 (11th Cir.1984); *but cf. Andrade v. City of Phoenix,* 692 F.2d 557, 565 (9th Cir.1982) (Wallace, J., concurring) ("neither the Supreme Court nor this court has held ... that extramarital sexual relations are constitutionally protected").

having nothing to do with Title VII. *See Ethnic Employees of Library of Congress v. Boorstin,* 751 F.2d 1405, 1415 & n. 14 (D.C.Cir.1985).

### C. *The Effect of* Bush v. Lucas

■ As an alternative ground for dismissing Kotarski's *Bivens* claims, the district court held that they were precluded by the doctrine of *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). This ruling presents a much closer question than the Title VII issue, but we conclude that it, too, was erroneous.

In *Bush,* the Supreme Court rejected a *Bivens* claim of a non-probationary federal employee who sought to challenge his demotion on the ground that it was a reprisal for constitutionally protected activity. The Court held that the presence of a congressionally-established, comprehensive regulatory scheme governing federal employer-employee relationships was a "special factor[ ] counselling hesitation" in implying a *Bivens* remedy. 462 U.S. at 378, 103 S.Ct. at 2411; *see Bivens,* 403 U.S. at 396, 91 S.Ct. at 2004. The Court concluded that, in light of the "elaborate remedial system" constructed by Congress, 462 U.S. at 388, 103 S.Ct. at 2416, it should not add a *Bivens* remedy to those provided by Congress in the exercise of its legislative judgment. *Id.* at 390, 103 S.Ct. at 2417.

Kotarski contends that *Bush* is inapplicable to his case because the employee in *Bush* was fully tenured and entitled to all of the protections of the civil service system. Kotarski's supervisory appointment was probationary; with regard to that position, he was excluded from the Civil Service Reform Act's definition of "employee" and the remedies that go with it. *See* 5 U.S.C. § 7511(a)(1)(A); *Piskadlo v. Veterans' Administration,* 668 F.2d 82, 83 (1st Cir. 1982).

The defendants counter that the lesson to be derived from *Bush* is that the judiciary should not interfere in the congressionally-ordered scheme of federal employment by fashioning intrusive remedies. If Congress chose to exclude probationary

employees from nearly all of the protections of the Act, that decision was a conscious recognition of the fact that probation "is an extension of the examining process to determine an employee's ability to actually perform the duties of the position. It is inappropriate to restrict an agency's authority to separate an employee who does not perform acceptably during this period." S.Rep. No. 969, 95th Cong., 2d Sess. 45, *reprinted in* 1978 U.S. Code Cong. & Ad.News 2723, 2767.

Defendants' reading of *Bush* is not without support. In *Pinar v. Dole,* 747 F.2d 899 (4th Cir.1984), *cert. denied,* 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985), the Fourth Circuit held that *Bush* precluded *Bivens* relief for a federal employee who claimed that his temporary promotion had been terminated because of his "whistle-blowing" activities. Because the promotion was temporary, the employee's administrative remedies were no greater than Kotarski's. *See also Carroll v. United States,* 721 F.2d 155 (5th Cir.1983) (on rehearing) (*Bush* precludes *Bivens* action for former employee seeking reinstatement and back-pay; administrative remedy available for reinstatement but not back-pay), *cert. denied,* 467 U.S. 1241, 104 S.Ct. 3511, 82 L.Ed.2d 820 (1984); *Francisco v. Schmidt,* 575 F.Supp. 1200 (E.D.Wis.1983) (*Bivens* inappropriate in area of federal employee relations); *Watson v. United States Department of Housing and Urban Development,* 576 F.Supp. 580 (N.D. Ill.1983) (administrative remedies for probationary employees adequate); *Crumpler v. Etter,* 579 F.Supp. 391 (E.D.N.C.1983) (congressional provision of some remedy precludes *Bivens* action).

With all respect, we cannot agree with the decision in *Pinar,* or with those in accord with it. First, we resist the tendency unduly to minimize the interests of the employee on the ground that only probationary status is involved. The primary interest asserted by the employee is a first amendment interest in free speech. Second, we regard as essential to the *Bush* holding the availability of a meaningful

remedy for the alleged constitutional violation. Third, we do not regard the remedies afforded by the Civil Service Reform Act to employees in probationary status to be adequate within the meaning of *Bush*. Each of these points requires elaboration.

Probationary status is nothing new; it is agreed that management must retain great flexibility in determining that a probationary employee ought not to be granted permanent status. To grant that proposition, however, is not to deprive probationary employees of all constitutional protection.[5] Accordingly, "[a] probationary employee may be discharged for any reason, or for no reason at all, but not for an unconstitutional reason." *Huffstutler v. Bergland*, 607 F.2d 1090, 1092 (5th Cir.1979). Indeed, the Supreme Court itself made this point quite clear in *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), a case involving a non-tenured college professor:

> [E]ven though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringe his constitutionally protected interests—especially, his interest in freedom of speech.

*Id.* at 597, 92 S.Ct. at 2697; *see Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 283–84, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977). Probationary status, therefore, cannot be the foundation for a total negation of the first amendment rights of the employee.

We therefore are unable to read *Bush* as simply placing probationary employment off limits to the judiciary. It is true that *Bush* emphasized Congress' special interest and authority in dealing with questions of federal employment. *Bush*, 462 U.S. at 389, 103 S.Ct. at 2417. But *Bush* cannot be read apart from its pervasive emphasis on the remedies provided by Congress for the complaining employee in that case—remedies that the Court noted were unavailable to probationary employees. *Id.* at 385 n. 28, 103 S.Ct. at 2414 n. 28. The Court stressed that the employee being demoted was entitled to a statement of the charges, an opportunity to offer rebuttal, a decision by a higher official, then an appeal to the Federal Employee Appeals Authority which was required to hold a trial-type hearing. An adverse decision was then subject to judicial review. 462 U.S. at 386–87, 103 S.Ct. at 2415–16. If the employee prevailed at any stage, he was entitled to reinstatement with retroactive seniority and full backpay. *Id.* at 388, 103 S.Ct. at 2416. Thus, as the Court pointed out, "[t]he question [was] not what remedy the court should provide for a wrong that would otherwise go unredressed." *Id.* While the remedies provided by Congress were in some respects not as complete as those that would be available in a *Bivens* action, the congressional scheme nevertheless provided "meaningful remedies for employees who may have been unfairly disciplined for making critical comments about their agencies." *Id.* at 386, 103 S.Ct. at 2415 (footnote omitted). That conclusion, we suggest, is central to the holding in *Bush*. *See Williams v. IRS*, 745 F.2d 702, 705 (D.C.Cir.1984) (per curiam).

Guided by *Bush*, then, we view the question before us to be whether the congressional and administrative remedies provided for Kotarski as a probationary employee are sufficient to give meaningful protection to his constitutional rights. If they are,

---

5. We do not find *United States v. Connolly*, 716 F.2d 882 (Fed.Cir.1983), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984), relied upon by defendants, to be contrary to our view. In *Connolly*, a probationary employee contested his removal on statutory and regulatory grounds. The court held that he was not entitled to judicial review because Congress intended no such review for probationary employ-ees. The employee also had a first amendment claim, however, and the court did not subject that claim to the same analysis. Instead, the court held that the first amendment claim was not within the Tucker Act jurisdiction of the Claims Court because the first amendment of itself did not create an obligation of the United States to pay money. *Id.* at 886–87.

*Bush* requires us to refrain from implying a *Bivens* remedy. *See Clemente v. United States,* 766 F.2d 1358, 1364 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 881, 88 L.Ed.2d 917 (1986). If they are not, then it seems appropriate to overcome the hesitation counseled by the fact of federal employment and to imply a *Bivens* remedy, *id.* at 391, 103 S.Ct. at 2418 (Marshall, J., concurring), at least in the absence of an express congressional negative. *See id.* at 378 n. 14 & 389, 103 S.Ct. at 2411 n. 14 & 2417.

Kotarski argues that he is without remedy for violation of his constitutional rights and that, as in *Bivens,* "it is damages or nothing." *Bivens,* 403 U.S. at 410, 91 S.Ct. at 2011 (Harlan, J., concurring). The answer is not quite that simple, however. The remedies provided by the congressional scheme need not provide "complete relief" in order to be adequate to forestall a *Bivens* action, *Bush,* 462 U.S. at 388, 103 S.Ct. at 2416, and Kotarski was not wholly excluded from the congressionally-designed system.

As a probationary employee, Kotarski was entitled to appeal the agency action to the Merit Systems Protection Board if the action was based upon "partisan political affiliation or marital status." 5 C.F.R. § 315.908(b). Kotarski did attempt such an appeal, apparently on the theory that his privacy claim might be one of "marital status," but the Board held that it was without jurisdiction over his appeal. Accordingly, we may view that remedy as unavailable to Kotarski. Kotarski also submitted his complaint to the Special Counsel of the Board, who is independently authorized to receive complaints of a "prohibited personnel practice." 5 U.S.C. § 1206(a)(1). The definition of "prohibited personnel practice" includes reprisal against a "whistleblower" as well as discrimination against an employee or applicant for employment on the basis of conduct which does not adversely affect performance of the job. 5 C.F.R. § 1250.-3(b)(8), (10). The Special Counsel investigated Kotarski's charges both in regard to his relationship with his woman friend and

to his whistleblowing activities, and informed him by letter that the evidence was "insufficient to establish that those matters were significant factors" in his demotion. Kotarski complains that the investigation consisted of interviews that Kotarski was given no access to or record of, and thus had no opportunity to rebut.

If this investigation by the Special Counsel were a part of a system of enforceable relief for constitutional violations, we would be compelled to conclude that no *Bivens* action could be implied. Indeed, the relief could doubtless fall quite short of *Bivens* relief and still be constitutionally adequate, in light of the designed precariousness of the probationary position from which Kotarski was demoted. The role of the Special Counsel in receiving and investigating complaints, however, is not part of a system embodying any remedy enforceable by a complainant who demonstrates a violation of constitutional rights. While the Special Counsel is directed by the statute to receive and investigate any allegation of a prohibited personnel practice, 5 U.S.C. § 1206(a)(1), and to report to the Board and the agency involved if the Special Counsel determines that there are reasonable grounds to believe that a prohibited practice has occurred, § 1206(c)(1)(A), no more need be done. If, after a reasonable time, the agency has not taken corrective action, the Special Counsel "may" request the Board to consider the matter, and the Board "may" order such corrective action as it deems appropriate. § 1206(c)(1)(B). Unlike the complainant in *Bush,* the probationary employee has no enforceable right, and no judicial review, even if he or she demonstrates a constitutional violation. Nor is there any right of participation in the process of investigation and decision whether to take action.

We do not regard this structure as one that provides "meaningful remedies" to one whose constitutional rights have been violated. While the wrong may be righted as a matter of discretion, every constitutional violation by any agency is subject to that kind of correction. The central fea-

tures of the congressional remedial system in *Bush* and of the alternative *Bivens* remedy are the right to a forum in which to establish a constitutional violation and the right to enforce significant relief if a violation is shown. Neither feature exists for the probationary employee whose only means of seeking redress is to complain to the Special Counsel.

Our conclusion is supported by *Williams v. IRS*, 745 F.2d 702 (D.C.Cir.1984) (per curiam), in which the court refused to apply *Bush* to defeat a claim by an Internal Revenue Service attorney who contested his five-day disciplinary suspension. As one ground of its decision, the court stated:

> *Bush* rested in large measure on the meaningful, even if less than optimally effective, statutory remedy Congress made available to the complainant, one that afforded him retroactive reinstatement and back pay. Williams is differently situated; he has no CSRA-conferred guarantee of an administrative adjudication outside the Service or of direct court review.

*Id.* at 705. *See also Doe v. United States Department of Justice*, 753 F.2d 1092, 1118 n. 2 (Wald, J., dissenting); *Harris v. Moyer*, 620 F.Supp. 1262 (N.D.Ill.1985) (*Bush* not applicable to defeat *Bivens* action by probationary employee, because employee had no statutory right of appeal to Merit System Protection Board). Similarly, *Borrell v. United States International Communications Agency*, 682 F.2d 981, 988–91 (D.C.Cir.1982), a case decided before the Supreme Court's decision in *Bush*, held that a probationary employee could bring suit in federal court based on her claim that she was discharged for whistle-blowing activities. The Civil Service Reform Act was held not to preclude her action because she was excluded from all of its remedies except the right to complain to the Special Counsel. *See also Egger v. Phillips*, 710 F.2d 292, 297–98 (7th Cir.) (en banc) (plurality opinion) (exemption of FBI agents from civil service regulations permits *Bivens* action), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983); *but see Broadway v. Block*, 694 F.2d 979,

985–86 (5th Cir.1982) (*Bivens* action not available to contest reassignment).

The defendants contend that it is anomalous to give probationary employees a greater protection of their constitutional rights, by way of a *Bivens* action, than is available to fully tenured employees, who are confined to their civil service remedies. It may be. *See Francisco v. Schmidt*, 575 F.Supp. at 1203. The alternative, which strikes us as at least equally anomalous, is to hold that a *Bivens* action that would otherwise be appropriate for a probationary employee is rendered inappropriate by the enactment of a scheme of enforceable remedies from which probationary employees are excluded by definition. *See Egger v. Phillips*, 710 F.2d at 298 (plurality opinion). To reach such a result, we would have to conclude that Congress had both the intention and the authority to deprive probationary employees of all meaningful protection for their constitutional rights. Like the Supreme Court in *Bush*, 462 U.S. at 378 n. 14, 103 S.Ct. at 2411 n. 14, we need not decide the question of Congress' authority, for we conclude that it could not have intended such an untoward result.

Moreover, any distortion that occurs as the result of the availability of a *Bivens* action to probationary employees is quite limited. The greater protection for probationary employees extends only to constitutionally based claims; they have no right of appeal or other redress when their probationary status is terminated for normal management reasons. *See, e.g.*, 5 C.F.R. § 315.908(a); *Lehman v. Morrissey*, 779 F.2d 526 (9th Cir.1985). Nor is it clear that the *Bivens* remedy for probationary employees is invariably preferable to the civil service remedies available to regular employees. Review under the civil service system is almost certainly speedier and less costly than a *Bivens* action. *See Bush*, 462 U.S. at 391, 103 S.Ct. at 2418 (Marshall, J., concurring). The civil service complainant enjoys a more favorable burden of proof, and avoids possible immunity defenses that are likely to be asserted in a *Bivens* action. *Id.* We therefore do not regard the avail-

ability of a *Bivens* action to probationary employees as a startling development. Of course, Congress can cure any lack of symmetry by bringing *Bivens*-type claims of probationary employees within the regular remedial system.

For the reasons stated above, therefore, we conclude that Kotarski, as a probationary supervisor, is not barred by *Bush v. Lucas* from pursuing his *Bivens* action against those who allegedly violated his constitutional rights.

D. *Review Under the Administrative Procedure Act*

■ Kotarski also sought review of his demotion under the provisions of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* This claim is foreclosed by our decision in *Veit v. Heckler*, 746 F.2d 508 (9th Cir.1984), in which we held that federal courts had no jurisdiction to review federal personnel actions under the Administrative Procedure Act.[6]

E. *Due Process*

In addition to his claims based on rights of privacy and free expression, Kotarski claimed that his fifth amendment right to due process was violated.[7] The defendants contend that Kotarski cannot have suffered a deprivation of property without due process, because he had no entitlement or property interest in his probationary supervisor's position. *See Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); *Bishop*

*v. Wood*, 426 U.S. 341, 345 n. 8, 96 S.Ct. 2074, 2077 n. 8, 48 L.Ed.2d 684 (1976).

Kotarski counters that there was a clear expectancy that he would remain in his supervisor's position so long as he performed satisfactorily, and that this expectancy amounted to an entitlement for fifth amendment purposes. *See Perry v. Sindermann*, 408 U.S. 593, 599–603, 92 S.Ct. 2694, 2698–2700, 33 L.Ed.2d 570 (1972). He supports his argument with a reference to a personnel manual. He also contends that sufficient publication of his demotion occurred or will occur that he has been stigmatized in a manner affecting his liberty interest. *See Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *but see Bishop v. Wood*, 426 U.S. 341, 348–49, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976).

The district court, having disposed of Kotarski's claims against the individual defendants on other grounds, did not address the due process claim. Because the due process issues of entitlement and stigma have substantial factual components, it would be inappropriate for us to address this claim before the district court has done so. We therefore express no opinions on the merits of the conflicting contentions, and leave the matter for the district court on remand.

F. *Immunity*

The individual defendants contend that they are entitled to absolute immunity from liability for the commission of common law torts when acting within the scope

---

**6.** We do not regard the holding or language of *Veit* to be contrary to our conclusion that Kotarski may seek damages for his demotion in a *Bivens* action. *Veit* dealt with the claim of a regular federal employee that he should have been given a higher job performance rating. We held that, in view of the extensive remedies available to a tenured employee under the Civil Service Reform Act, judicial review was precluded for lack of congressional authorization, even though no administrative remedy was provided for the wrong Veit complained of. *Veit*, 746 F.2d at 511. Our conclusion that no review was available was confined to review of Veit's non-constitutional claim. Veit also had a fifth amendment claim that we dealt with separately

on the merits, holding that Veit had failed to show a property interest in a claimed merit increase. *Id.*

**7.** To the extent that Kotarski asserts a due process claim against the Naval Air Rework Facility as part of his claim for reinstatement and back pay, the claim is subject to our discussion in part A, *supra.* The district court appeared to treat Kotarski's due process claim as part of his *Bivens* claims against the individual defendants. At least one of Kotarski's due process claims alleged in his complaint seems to be directed at two of the individual defendants.

of their employment and authority. *See Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). With regard to Kotarski's constitutional claims, however, the defendants would be entitled, at most, to qualified immunity. *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). They would be immune only so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

Immunity, too, was not reached by the district court. Whether the actions of defendants violated clearly established statutory or constitutional rights, and whether a reasonable person would have known of them, are matters which it would be premature to determine now. The district court can address those issues, if necessary, upon remand.

### G. *Conclusion*

The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

CYNTHIA HOLCOMB HALL, Circuit Judge, dissenting:

> For what each man wishes, that he also believes to be true.

Demosthenes, Third Olynthiac § 19 (J. Vince trans. 1930).

The majority believes that central to the holding of the Supreme Court's decision in *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) is the proposition that the remedies provided by Congress for federal employees must give "meaningful protection to ... constitutional rights." Op. at 1347. In the majority's opinion, "meaningful remedies" include only remedies where the employee has an "enforceable right," a right to judicial review, or the "right of participation in the process of investigation and decision." Op. at 1348. Because the majority believes

that the remedies available to Kotarski after losing his temporary promotion are not "meaningful" and because the majority also believes that *Bush* requires such remedies, it concludes that Kotarski is entitled to a full damage remedy in federal court for loss of his temporary promotion if he can prove that his reduced status was effected in violation of constitutional rights. This remedy is available to Kotarski even though employees demoted after receiving permanent promotions in violation of their constitutional rights have no private damage action under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and are limited to the administrative avenues of the civil service system. *Bush,* 462 U.S. at 388–90, 103 S.Ct. at 2416–17.

The court in *Bush* held that a federal employee who was demoted allegedly in violation of his first amendment rights was not entitled to a private damage remedy under *Bivens.* The majority's belief that the focus of *Bush* is upon the nature of the remedies provided by Congress is not supported by a reading of the case. Time and time again in *Bush* the Court underscored that the basis of its decision centered on the significant problems of judicial review of federal personnel decisions coupled with the fact that Congress is in a better position to strike a balance between the need for efficient government employees and the need to protect the rights of those employees. These concerns constituted "special factors counselling hesitation [in the creation of a damage remedy] in the absence of affirmative action by Congress." *Bivens,* 403 U.S. at 396, 91 S.Ct. at 2004.

The Court punctuated its decision in *Bush* by repeated disclaimers that the nature of the congressionally prescribed remedies did not underlie its rationale. At the outset, the Court explained that the meaning of the phrase "special factors counselling hesitation" first appearing in *Bivens* was illustrated by its prior decisions in *United States v. Standard Oil Co.,* 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067

(1947) and *United States v. Gilman*, 347 U.S. 507, 74 S.Ct. 695, 98 L.Ed. 898 (1954). In *Standard Oil*, the Court refused the government's request for a new damage remedy against a tortfeasor responsible for injuries to a soldier. The Court reasoned that Congress, "the custodian of the national purse," and not the courts should bear the responsibility for fashioning national fiscal policy. *Standard Oil*, 332 U.S. at 314, 67 S.Ct. at 1611. In *Gilman*, the Court refused to allow the government to seek indemnification from one of its employees responsible for creating federal liability under the FTCA. The Court in *Gilman* noted that the creation of an indemnification remedy would significantly affect the relationship between the government and its employees, impacting employee efficiency and morale as well as federal fiscal policy. *Gilman*, 347 U.S. at 510, 74 S.Ct. at 697. *Gilman* held that Congress was in a better position than the courts to fashion such a remedy. *Id.* at 511, 74 S.Ct. at 697.

*Bush* held that the *Standard Oil* and *Gilman* decisions demonstrated that the "special factors" inquiry focuses on which branch of government should decide whether a remedy should be provided.

> The special factors counselling hesitation in the creation of a new remedy in *Standard Oil* and *Gilman* did not concern the merits of the particular remedy that was sought. Rather, they related to the question of who should decide whether such a remedy should be provided. We should therefore begin by considering whether there are reasons for allowing Congress to prescribe the scope of relief that is made available to federal employees whose First Amendment rights have been violated by their supervisors.

*Bush*, 462 U.S. at 380, 103 S.Ct. at 2412.

The Supreme Court in *Bush* stated further:

The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. That question obviously cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff. The policy judgment should be informed by a thorough understanding of the existing regulatory structure and the respective costs and benefits that would result from the addition of another remedy for violations of employees' First Amendment rights.

\* \* \* \* \* \*

> Thus, we do not decide whether or not it would be good policy to permit a federal employee to recover damages from a supervisor who has improperly disciplined him for exercising his First Amendment rights. As we did in *Standard Oil*, we decline "to create a new substantive legal liability without legislative aid and as at the common law," 332 U.S., at 302 [67 S.Ct. at 1605] because we are convinced that Congress is in a better position to decide whether or not the public interest would be served by creating it.

*Id.* at 388–90, 103 S.Ct. at 2416–17.[1]

As the majority notes, *Bush* involved a demotion of a nonprobationary federal employee. In *Pinar v. Dole*, 747 F.2d 899 (4th Cir.1984), *cert. denied*, 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985), the Fourth Circuit held that the Congressional remedial scheme for federal employees losing temporary promotion was constitutionally adequate, and no *Bivens* remedy was required. The majority's position today creates a direct conflict with *Pinar*. I agree with the Fourth Circuit and with the district court in this case that *Bush* pre-

---

**1.** Only two justices took the position that the congressionally-adopted remedy should approximate *Bivens* relief. *See Bush*, 462 U.S. at 390– 92, 103 S.Ct. at 2417–18 (Marshall, J., concurring).

cludes a *Bivens* remedy for probationary employees as well.

Under current law, Congress has defined a "prohibited personnel action" as any action that is a reprisal for "a disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences a violation of any law, rule, or regulation...." 5 U.S.C. § 2302(b)(8). Congress enacted provisions like section 2302 so that an action taken by a supervisor "against an employee ... without having proper regard for the individual's *privacy or constitutional rights* ... could result in dismissal, fine, reprimand, or other discipline for the supervisor." S.Rep. No. 95–969, 95th Cong., 2d Sess., reprinted in 1978 U.S. Code, Cong. & Admin.News at 2745 (emphasis added). Charges of prohibited practices are investigated by the Office of the Special Counsel which may recommend corrective action to the agency. 5 U.S.C. § 1206(a)–(c). If the agency fails to implement the recommended corrective action, the Special Counsel may request the Merit Systems Protections Board to consider the matter, and the Board may in turn order corrective action. 5 U.S.C. § 1206(c)(1)(B). Further, the Congressional scheme allows the Special Counsel to request, and the Board to grant, stays of personnel actions the Special Counsel reasonably believes were taken as the result of prohibited practices.

With this remedial system in place, Kotarski cannot claim that "it is damages or nothing." *Bivens* 403 U.S. at 410, 91 S.Ct. at 2011 (Harlan, J., concurring). Congress has enacted a scheme carefully tailored to balance the many competing concerns implicated in regulating federal employment and has chosen this remedial mechanism over a system allowing litigation between federal employees over employment-related discipline. In crafting the system, Congress has decided that different levels of protection are required for rights of differing magnitude. For demotion or termi-

nation of non-probationary employees, the full complement of administrative remedies discussed in *Bush* is available. For less severe personnel actions such as a termination of a probationary promotion, Congress has determined that review by the Special Counsel and in certain cases by the Board sufficiently deters constitutionally impermissible personnel decisions while maintaining morale and efficiency. *Bush* has stated that Congress is in the better position to decide whether a damage remedy is appropriate. Congress has decided that it is not, and I agree with the Fourth Circuit that Congress' decision precludes a *Bivens* remedy here. *See Pinar*, 747 F.2d at 911 and n. 9. *See also Crumpler v. Etter*, 579 F.Supp. 391, 392 (E.D.N.C.1983); *Watson v. United States*, 576 F.Supp. 580, 585–86 (N.D.Ill.1983); *Francisco v. Schmidt*, 575 F.Supp. 1200, 1202–03 (E.D. Wis.1983).

This is not a case in which Congress has expressly decided to provide no remedy at all or where Congress has failed to consider the need to remedy constitutionally proscribed conflict in the context of federal employment. The majority seems to view this case as a "no remedy" case or at least a "meaningless remedy" case, basing its conclusion on the fact that Kotarski cannot force the Special Counsel to take action or to bring the matter to the attention of the Board, that he cannot seek judicial review or that he cannot participate directly in the investigation.[2] I find no support in *Bush* or *Bivens* for any of these requirements. The majority concedes that the Congressionally-supplied remedy need not be coterminous with a *Bivens* remedy, and with that much I agree. I agree with *Pinar*, however, that the procedures provided for the loss of a temporary promotion are constitutionally adequate.

Congress has made a considered judgment that the remedies provided for the loss of a temporary promotion are sufficient to protect the rights of federal em-

---

**2.** Of course, the employee does participate to the extent that he provides the Special Counsel with the facts underlying his claim and to the extent he is required to respond to the Special Counsel's inquiries.

**1354**

ployees while maintaining the appropriate levels of efficiency and morale in both the supervisors and the supervised. The Supreme Court has decided that Congress is in the best position to make this decision and that, when it has done so, the courts should not interfere with the balance Congress has struck. The majority may wish that Congress had done more—but that is not enough.

I dissent.